## Commonwealth *v.* Vivian, Appellant.

Argued May 2, 1967. Before BELL, C. J., MUSMAN-
NO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*Judah I. Labovitz*, with him *Howard Gittis*, for appellant.

*Gordon Gelfond*, Assistant District Attorney, with him *Benjamin H. Levintow* and *Alan J. Davis*, Assistant District Attorneys, *Richard A. Sprague*, First Assistant District Attorney, and *Arlen Specter*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, June 29, 1967:

Howard J. Vivian pleaded nolo contendere in Philadelphia County to four separate bills of indictment (No. 712 March Sessions 1965; Nos. 751, 752 and 754 August Sessions 1965) charging him with assault and battery. Additionally, he was found guilty after a trial before a judge, sitting by agreement without a jury, on charges of aggravated assault and battery, assault and battery, and assault and battery with intent to murder, all of which were included in a bill of indictment designated No. 667 May Sessions 1965.[1] After

---

[1] Vivian was also tried at the same time on a series of other indictments charging him with corrupting the morals of various minors and with solicitation of various minors to commit sodomy. At the conclusion of the Commonwealth's testimony, the trial court sustained demurrers to the evidence in these cases. The Commonwealth did not appeal and they are, therefore, not before us.

sentence was imposed in each case, he appealed to the Superior Court which affirmed the judgments. See *Commonwealth v. Vivian*, 208 Pa. Superior Ct. 330, 222 A. 2d 739 (1966). We granted allocatur.

### Indictment No. 667

The judgment in this instance will be reversed and a new trial ordered.

During the trial on this indictment testimony of statements made by Vivian to the police during in-custody questioning was admitted in evidence against him. It is unnecessary here to again detail the circumstances under which these statements were obtained as such are adequately set forth in the opinions of the courts below. Suffice it to note that admittedly the record does not establish that before or during the questioning involved Vivian was warned of his constitutional right to remain silent. Since this case was tried in August 1965, or subsequent to the decision in *Escobedo v. Illinois*, 378 U.S. 478 (1964), this in itself rendered the testimony constitutionally inadmissible. See *Commonwealth v. Jefferson*, 423 Pa. 541, 226 A. 2d 765 (1967).

None of the attending circumstances, in our view, dispensed with the requirement that the warning of the right to remain silent be given. The facts in the instant case cannot be equated with the situation presented in *Commonwealth v. Eperjesi*, 423 Pa. 455, 224 A. 2d 216 (1966), wherein statements of the accused were truly volunteered. And, a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon a constitutionally tainted admission or confession without regard for the truth or falsity thereof, even though there is ample evidence aside from the admission or confes-

sion to support the conviction.[2] See *Miranda v. Arizona,* 384 U.S. 436, 464 n. 33 (1966) ; *Jackson v. Denno,* 378 U.S. 368, 376, 428 (1964) ; *Rogers v. Richmond,* 365 U.S. 534, 540-541 (1961) ; and, *Payne v. Arkansas,* 356 U.S. 560, 567-568 (1958).

At trial Vivian's counsel objected to the admission of the challenged evidence, but did not specifically cite or raise as a reason therefor the absence of the warning of Vivian's right to remain silent. The Commonwealth, therefore, contends that this constituted a waiver of his right to subsequently question the admissibility of the testimony on this ground. We do not agree. The questioning of the witnesses, who testified as to Vivian's statements, was sufficient to indicate, that evidentiary use of the testimony was being challenged on constitutional grounds, and to place this issue before the court. Compare *Jackson v. Denno,* supra.

This case also poses the serious question of whether or not Vivian's right to the assistance of counsel, as guaranteed by the Sixth Amendment to the Constitution of the United States, was illegally restricted dur-

---

[2] This doctrine, commonly known as the "automatic reversal" rule, was initially formulated by the United States Supreme Court in *Bram v. United States,* 168 U.S. 532, at 541 (1897). For an informative, compact treatment of the historical development and apparent underpinnings of the rule, see Recent Developments, 65 Mich. L. Rev. 563 (1967). The above article states that any of three separate rationales may constitute the logical basis for the rule. Thus, the use of an inadmissible confession requires automatic reversal regardless of the existence of ample admissible evidence because: (1) It is impossible to accurately measure what impact the confession had on the jury. *Payne v. Arkansas,* 356 U.S. 560, 567-568 (1958) ; or, (2) The defendant has been deprived of a constitutional right. *Miranda v. Arizona,* 384 U.S. 436, 481 n. 52 (1966) ; or, (3) Law enforcement officials who use constitutionally tainted evidence to secure convictions are to be "punished" and thereby discouraged from future repetitions by having such convictions automatically reversed. 65 Mich. L. Rev. 563, 569 n. 39 (1967).

ing the trial. It appears that on the fourth day of trial, while Vivian was under examination as a witness, the noonday recess interfered. The trial judge remanded him to the custody of an officer for the recess period, and instructed his counsel that he would not be permitted to see Vivian or discuss the case with him during this time. This was error. As pointed out in *United States v. Venuto*, 182 F. 2d 519, 522 (3d Cir. 1950), there is "no justification for imposing a restriction of silence between accused and counsel during a trial recess." Again as stated in *Commonwealth v. Werner*, 206 Pa. Superior Ct. 498, 501, 502, 214 A. 2d 276, 278 (1965) : "The right to the assistance of that counsel is not a right which exists only from 9 :00 a.m. to 4 :00 p.m. and only in the courtroom, and only concerning certain aspects of the case. . . . [L]imiting this right is reversible error." (footnote omitted.) See also, *Commonwealth v. Peetros*, 206 Pa. Superior Ct. 503, 214 A. 2d 279 (1965), and *Pendergraft v. Mississippi* (involving the imposition of such a restriction during a noonday recess), 191 So. 2d 830 (1966). The fact that no prejudice resulted from such interference with the right to the assistance of counsel is, in our opinion, not controlling. Likewise, the fact that the period involved was of short duration does not alter the situation or obviate the error.

We are not unmindful of the fact that an examination of the record discloses a serious procedural question. Subsequent to trial Vivian pressed a motion in arrest of judgment, but not a motion for a new trial. Under many previous decisions of this Court, the questions just discussed, supra, may not properly be raised on a motion in arrest of judgment.[3] See 19 P.S. §871

---

[3] This procedural gap was not raised here or below, and the lower courts disregarded it and ruled upon the merits of the questions presented.

(Supp.) and cases cited. However, since they are ques-. tions of constitutional dimension which could properly be raised subsequently in a proceeding for post-conviction relief, and for the very practical reason that it would be better for all concerned to expeditiously retry the issue while the witnesses are still available and the circumstances relatively fresh in their minds, we have decided to cut the Gordian knot and dispose of the issues raised.

### Indictments Nos. 712, 751, 752 and 754

The sole assignment of error asserted in these cases challenges the validity of the sentences imposed.

The factual background giving rise to this issue is this: Vivian originally plead "not guilty" to bills of indictment Nos. 712, 751, 752 and 754, as well as indictment No. 667. During the third day of trial, he was permitted to withdraw this plea as to the first four indictments mentioned and enter a plea of nolo contendere thereto. The trial proceeded on indictment No. 667. On the fifth day after the testimony had concluded, Vivian was found guilty by the trial judge of all charges contained in all five indictments, including those to which he had previously pleaded nolo contendere. Sentence was then deferred in all cases pending a pre-sentence investigation to be made by the court's probation department.

On February 14, 1966, Vivian was called before the court for sentence. An extensive discussion ensued. The record discloses the court was seriously troubled as to what disposition should follow. Vivian had been furloughed from a mental institution as an out-going patient only a short time before the crimes involved were committed. There was also a detainer on file from another county. A report of a neuro-psychiatric examination of Vivian given to the court was not

clear. Another immediate psychiatric examination was directed, and the court then stated he would release Vivian for two weeks, at the end of which time he wanted, inter alia, a report from the psychiatrist, and a specific recommendation as to whether or not probation should continue. He then placed Vivian on probation for a period of five years in the case arising out of indictment No. 667, and on one year's probation in each case arising out of indictments Nos. 712, 751, 752 and 754. All periods of probation were to run consecutively.[4]

On February 23, 1966, Vivian was again called before the court. In the interim the trial judge had received reports from a psychiatrist and from the Director of the Forensic Psychiatric Clinic at Temple University, each of whom had examined Vivian after February 14th. Therein it was stated that an effective period of vocational training was needed if rehabilitation were to be accomplished, and probation was strongly opposed. After a consideration of these findings, the court then sentenced Vivian to imprisonment for a term of one to four years on indictment No. 667, and six months to one and one-half years on indictments Nos. 712, 751, 752 and 754, the sentences to run consecutively.

It is now asserted that the prison sentences imposed on February 23, 1966, modifying the court order of probation on February 14, 1966, violated due process and constituted double jeopardy in violation of the provisions of Article I, §10 of the Pennsylvania Consti-

---

[4] The docket entries state sentence was also "suspended", but the transcribed record of the proceedings does not show the judge said anything about suspending sentence. However, it has been decided that when a defendant is placed on probation the court need not use the words, "suspend the imposition of sentence": *Commonwealth ex rel. Champion v. Claudy*, 171 Pa. Superior Ct. 143, 90 A. 2d 638 (1952).

200

tution and the Fifth Amendment to the Constitution of the United States.[5]

The Superior Court took the position that the order of probation of February 14th was not a "sentence" (citing *Commonwealth v. Ferguson,* 201 Pa. Superior Ct. 649, 193 A. 2d 657 (1963), and *Commonwealth ex rel. Champion v. Claudy,* 171 Pa. Superior Ct. 143, 90 A. 2d 638 (1952)), and concluded that Vivian was not placed in jeopardy until judgment of sentence was actually imposed on February 23rd. It, therefore, reasoned that the constitutional question of double jeopardy was not involved.

While an order placing a defendant on probation under the provisions of the Acts of June 19, 1911, P. L. 1055, §1, 19 P.S. §1051, and August 6, 1941, P. L. 861, §25, 61 P.S. §331.25, is not a judgment of sentence[6] as that term is construed for the purposes of procedure, it does, in our view, constitute punishment for the purposes of determining the question of double jeopardy. It is unquestionably a restriction on the defendant's freedom and a deprivation of his liberty within the meaning of the Fourteenth Amendment.

---

[5] This Court has consistently ruled that the proscription against double jeopardy in the Pennsylvania Constitution applies only where a person is twice placed in jeopardy for a crime punishable by death. See *Commonwealth ex rel. Papy v. Maroney,* 417 Pa. 368, 370, 207 A. 2d 814, 815-816 (1965), and cases cited therein. We have also ruled that the double jeopardy clause of the Fifth Amendment to the United States Constitution has not been "selectively incorporated" into the due process clause of the Fourteenth Amendment and thus is not binding on the states. See *Commonwealth v. Warfield,* 424 Pa. 555, 227 A. 2d 177 (1967). See also, *Hoag v. New Jersey,* 356 U.S. 464 (1958). But compare, *Cichos v. Indiana,* 385 U.S. 76, 80-82, 87 S. Ct. 271, 273-274 (1966) (FORTAS, J., dissenting).

[6] While interlocutory, it is an appealable order. See *Commonwealth ex rel. Paige v. Smith,* 130 Pa. Superior Ct. 536, 198 A. 812 (1938); and *Commonwealth v. Elias,* 394 Pa. 639, 149 A. 2d 53 (1959).

*Commonwealth ex rel. Ensor v. Cummings,* 420 Pa. 23, 215 A. 2d 651 (1966). We cannot agree, therefore, that a defendant who is placed on probation with conditions imposed is not placed in jeopardy as that term is used in the Fourteenth Amendment.

While we, therefore, disagree with the Superior Court's initial premise on this question, we do agree with its ultimate conclusion that Vivian was not subjected to double jeopardy in this case.

If a defendant is placed on probation under the Acts of 1911 and 1941, supra, the court clearly has the right to later modify the order of probation if the terms thereof are violated or conditions thereof are not met, and if this occurs, this does not constitute double jeopardy. Cf. *Kelley v. United States,* 235 F. 2d 44 (4th Cir. 1956) (Per Curiam).

In the instant case one of the conditions of probation imposed by the trial court was that Vivian would be examined immediately by a psychiatrist and that he recommend that probation was a proper and safe procedure. It is clear that this latter aspect of the condition was not met. In fact, the psychiatric report was to the contrary. Therefore, the trial court in its discretion had the right to change its order of probation and impose a prison sentence (Cf. *Commonwealth v. Orsino,* 197 Pa. Superior Ct. 306, 178 A. 2d 843 (1962)) without violating the proscription against double jeopardy included in the Fifth Amendment to the United States Constitution, even if we were to assume that this proscription applies to the states.[7]

---

[7] While we do not consider it necessary to rely on the following under the circumstances of the instant case, we note that under Pennsylvania law, the court may in the exercise of its discretion change or modify a sentence during the court term or for a period of thirty days from the date of entry of the original sentence where the term of court terminates prior to the thirty-day period. See Act of June 1, 1959, P. L. 342, §1, 12 P.S. §1032

Judgment imposed on indictment No. 667 reversed and new trial ordered.

Judgments imposed on indictments Nos. 712, 751, 752 and 754 affirmed.

The order of the Superior Court as modified is affirmed.

Mr. Justice COHEN took no part in the consideration or decision of this case.

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I join in the majority's disposition concerning indictment No. 667.

I concur in the result reached on the remaining indictments solely because the probation of February 14, 1966 was a conditional probation, dependent upon the results of future psychiatric examinations. Were it otherwise, I believe the imposition of a greater sentence in these circumstances would violate the constitutional prohibition against double jeopardy. *United States v. Benz*, 282 U.S. 304, 51 S. Ct. 113 (1931); *Ex Parte Lange*, 85 U.S. (18 Wall.) 163 (1873); see *Commonwealth v. Warfield*, 424 Pa. 555, 562-66, 227 A. 2d 177, 181-83 (1967) (concurring and dissenting opinion of this writer). Except for the double jeopardy argument, there is no suggestion in the briefs or record that the revocation of the probation was an abuse of discretion.

---

(Supp.); *Commonwealth v. Gallagher*, 200 Pa. Superior Ct. 136, 186 A. 2d 842 (1962); *U. S. ex rel. Jones v. Commonwealth*, 218 F. Supp. 689 (W.D. 1963); 11 P.L.E., Criminal Law §645; and, 11A Vale Penna. Digest, Criminal Law §993 (1952) and cases cited therein. (Especially Pocket Parts).