## Commonwealth v. Siegel

*John F. Bell,* First Assistant District Attorney, for Commonwealth.

*Milton D. Rosenberg,* for defendant.

SWEET, P. J., January 19, 1970.—Defendant and the district attorney have each filed an answer in this matter. It was agreed at a meeting, Thursday, January 15, 1970, among Milton Rosenberg, Esq., Sherman Siegel, Esq., First Assistant District Attorney Bell and myself, that the record would consist, in addition to papers first filed, of the basic order of January 9th, the motion to disqualify, and these two answers, no oral testimony being necessary.

The district attorney has reported that on December 19, 1969, "counsel for the defendant notified the District Attorney's office that the defendant . . . would plead guilty to the charge," and that "subsequently, the District Attorney's office was notified that Judge Fergus would take the plea and impose sentence on December 24, 1969." The district attorney also stated that he was not involved in any agreement or negotiation between defendant and the sentencing judge. He closes his answer by saying, "The District Attorney's office had been notified that a plea had been set and that an assistant was to be present. It followed the instructions of the Court in doing so."

Was it proper for Judge Fergus to handle this matter in this way, wholly apart from the sentence imposed? I think not.

The administrative regulations for the year 1969 list the judges-of-the-term for the year. The November-December term was assigned to the president judge. This order says:

"The judge of the term will, to the extent such assignment applies, handle civil and criminal matters during the period of time denominated as such term. . . ."

This means that all matters not assigned on the trial list or specially to a named judge, are generally assigned to the judge-of-the-term.

In Smith v. Gallagher, 408 Pa. 551 (1962), 185 A. 2d 135, we find this:

"A judge must be assigned to the court over which he purports to preside. Judge Alessandroni in effect commandeered the grand jury court room when he took possession of the Leonard petition, but he was not assigned to the grand jury room. If he could assume jurisdiction, when not assigned thereto, over grand jury matters, then any judge in the criminal court could take similar jurisdiction. If petitions or other applications for judicial action do not go to the judge designated to handle the subject matter of the petition but may, in billiard-ball fashion, make the rounds of the courts, haphazardly striking and missing jurisdiction until the final destination and disposition becomes a matter of chance, then the mists of potential chaos will hover constantly over the courthouse."

Justice Musmanno's opinion in Smith v. Gallagher, supra, gives us some definition of a president judge's role in the premises. He said this, page 565: ". . . one President Judge, who will have authority to assign the judges to the various departments of work and to schedule the court's business so as to remove all overlapping or collision of effort and endeavor, creat-

ing in the end a homogeneous, close-knit, harmonious working court."

It is generally accepted that the president judge has the duty of assigning the business, and the judge-of-the-term system is the means we use here of assigning all matters not calendared or specially assigned.

The evil I seek to identify and break up here is the practice of judge-shopping. It is more common than it should be. Defendant was able to cite another instance of it which took place recently.[1]

It should be plain that the attorney for a criminal defendant should not pick which of the five judges should sentence him. The court should decide that, and we have a system for deciding it in an impersonal way. Here, defendant's attorney, without even discussing it with his opponent, the district attorney, simply picked Judge Fergus. This was done on December 19th. The president judge, who was judge-of-the-term, was here and working on the 19th and also in the court house on the half-holiday the 24th. It might be mentioned that only skeleton staffs were on duty the half day.

Entirely apart from the question of this young man's sentence, and, in the long run, much more important, is the decision: Can sentencing be privately set up this way? If we are to have one court here and not five, the answer has to be negative.

What can be done about it? Defendant claims that the action already taken is not only proper but final.

---

[1] It can range all the way from obtaining a perfunctory order from the wrong judge as a matter of convenience, to incidents like the one under review. It can readily be seen that the practice does not lend itself as well to regulation by rule, as by the good judgment and conscience of all concerned.

He also says this:

"(8) The attempt to vacate, modify or reconsider the executed sentence in the case at Bar is an illegal infringement of the defendant's rights in that the President Judge has no right to review the discretion of the sentencing judge or the severity of the sentence imposed."

This ignores the plain language of the Act of June 1, 1959, P. L. 342. This act has been mentioned by the Supreme Court in Commonwealth v. Tabb, 417 Pa. 13 (1965), and is evidently constitutional. A footnote to the decision in Commonwealth v. Vivian, 426 Pa. 192 (1967), reads as follows:

"While we do not consider it necessary to rely on the following under the circumstances of the instant case, we note that under Pennsylvania law, the court may in the exercise of its discretion change or modify a sentence during the court term or for a period of thirty days from the date of entry of the original sentence where the term of court terminates prior to the thirty-day period. . . ." (Footnote 7)

It should be noted that the act does not say "a sentencing judge may modify a sentence" but that "the court may . . . change or modify the sentence."

Judge Fergus is no longer with us. If he were on the bench, he could reconsider this sentence until January 23, 1970. Does his departure shorten the period in which the court can take action?

Suppose someone were merely paroled for a murder. Would this end all ability of the court to exercise its powers in a responsible way?

This matter should be heard before a judge to whom it is regularly assigned and he should reconsider whether the sentence should stand, be modified or altered.

It seems pretty plain that the form of sentence used

by Judge Fergus leaves it open for further action. The exact words on the sentence slip are:

"Pay a fine of $500.00, cost, sentenced 6-12 months, sentence suspended, upon payment of fine and costs."

It will be noted the fine was paid immediately, before noon of December 24th. Had there been only the fine and no more language, the principle of Commonwealth ex rel. Saeger v. Dressell, 174 Pa. Superior Ct. 39 (1953), would have been applied and the matter would probably have been closed. However, the words "6-12 suspended" were also written on the sentence slip and uttered by Judge Fergus. This certainly puts it back in the general rule as enunciated in Commonwealth ex rel. Berry v. Tees, 177 Pa. Superior Ct. 126 (1955) and quoting Commonwealth v. Peterson, 172 Pa. Superior Ct. 341 (1953):

"One may not be twice convicted of the same crime. So also, when convicted by plea or otherwise, a defendant may be sentenced but once. This has always been the law and the rule is invariable in its application with one exception, viz: Where a sentence is imposed during the term at which a defendant is convicted the court may alter the sentence by increasing or reducing the punishment during the term, but not thereafter." [2]

In the Berry case, supra, defendant's punishment was raised from 18 months flat in the jail to 1½ to 3 years in the penitentiary by the Lycoming judge and this was upheld. About the same thing happened in Commonwealth ex rel. Laughman v. Burke, 171 Pa. Superior Ct. 343 (1952). See also Commonwealth ex rel. Holly v. Ashe, 368 Pa. 211 (1951).

Defendant raises a question of double jeopardy,

---

[2] 1959 June 1, P. L. 342, No. 70, sec. 1, 12 PS §1032, further modifies this, of course.

citing Commonwealth v. Martin, 387 Pa. 449 (1956). We agree that this is an apt citation. This case holds at page 451:

"One is placed in double jeopardy if he has received an acquittal or its equivalent, or a sentence *which is no longer subject to attack*. Until such legal sentence is imposed, the jeopardy in which he was placed, when first tried, must be deemed to continue until the time of imposition of legal sentence at the subsequent trial." (Italics supplied.)

Martin, supra, was a murder case, and we have always applied the concept of double jeopardy in murder in Pennsylvania. We have not applied this concept to other crimes. For instance, in Vivian, supra, as recently as 1967, the Supreme Court said, footnote 5:

"This Court has consistently ruled that the proscription against double jeopardy in the Pennsylvania Constitution applies only where a person is twice placed in jeopardy for a crime punishable by death."

It goes on to say:

"We have also ruled that the double jeopardy clause of the Fifth Amendment . . . has not been 'selectively incorporated' into the due process clause of the Fourteenth Amendment and thus is not binding on the states."

Vivian and Martin, supra, have not been reversed in Pennsylvania. However, the Defenders Newsletter for July 1969 cites a report of two Federal cases which may well change this. Benton v. Maryland, 395 U.S. 784 and North Carolina v. Pearce, 395 U.S. 711 are said to have applied the double jeopardy concept to the States.

Whether this is relevant here, it is hard to tell. In Benton, supra, a man was convicted of burglary and acquitted of larceny. He won a retrial on the

burglary, and was forced to stand retrial on the larceny too. It was held that the sentence on the larceny, of which he was convicted the second time, was invalid because of double jeopardy. We would have never tried him the second time in Pennsylvania anyhow because of the applicability of "autrefois acquit." Does the Benton doctrine repeal the Act of 1959?

It can be supposed that defendant's sentence is subject to "attack" by the court until the end of the term or of 30 days. If the language of Martin, supra, defining double jeopardy for Pennsylvania murder purposes is now accurate to describe double jeopardy for all crimes in Pennsylvania, probably a vacation of this defendant's sentence for resentence would not be double jeopardy. However, when the known certainty of the law is brought into doubt by sweeping changes, no man knows where the outward edges of the change may be found.

It should also be noted that the time for Siegel to appeal his sentence has not yet expired. It may amaze some to learn this, but a defendant can appeal a sentence after a plea of guilty if the court was without jurisdiction, the sentence exceeds limits or there is a question of the validity of the plea. If the sentencing judge had belted this defendant with the five-year maximum and a $2,000 fine, then the position of the argument might have been exactly reversed. Then it would be defendant who would have raised a question of jurisdiction.

Defendant has advanced the point that the issuing of the order of January 9, 1970, without any request by either the district attorney or defendant was an illegal intervention and an abuse of judicial power.

However, rule 300 of the Statewide Rules of Criminal Procedure makes it plain that the president judge is charged with the duty and responsibility of

maintaining ". . . the orderly administration of criminal justice within the county subject only to the direction . . ." of the Chief Justice of Pennsylvania. (Italics supplied.)

Section (c) of rule 300 directs that the president judge shall ". . . promulgate such administrative regulations as he may deem necessary and shall direct the preparation of such calendars as are necessary for the disposition of criminal cases."

This means that the president judge is personally charged with the duty of controlling the schedules of criminal business. From the records, I find as a fact that this case was not assigned to Judge Fergus. It is my intention not to permit the criminal defendant to choose his own sentencing judge. There was no emergency in this matter. Accordingly, it was an abuse of procedure for counsel to arrange privately with Judge Fergus, and arrange for this sentencing. It is my duty and responsibility to prevent such abuses now, and in the future. *That is the main thrust of this case.*

A petition to disqualify me has been filed. Such a petition is to be decided by the conscience of the judge to whom it applies. I do not feel that I can properly abdicate the responsibility to administer the work. My position on the method of assignment of the work is utterly impersonal and cannot be affected by personalities. On the matter of resentence, if such proves necessary, however, I will grant the prayer of the petition because of the attitude of the family of defendant. . . .

Strictness or leniency on my part would alike be misconsidered. Accordingly, I make the rule heretofore issued absolute, and direct that this sentence be reconsidered.

I assign the matter to Judge Alexander R. Curran,

and direct that he reconsider this sentence, imposed by Judge Fergus, and take prompt action, as he sees fit, to affirm, alter, modify, suspend, reinstate, terminate, amend or rescind it, conformably to the Act of 1959, and as right and justice seem to him to demand.[3]

In further exercise of such power of calendar control, I assign to him also the cases of Commonwealth v. Robert L. Cordy, September term, 1969, No. 6; Commonwealth v. Andrew Lesso, September term, 1969, No. 14; Commonwealth v. David George Ott, Jr., September term, 1969, no. 23; Commonwealth v. Robert V. Sulkowski, September term, 1969, no. 28, and, Commonwealth v. Barry K. Sutherland, September term, 1969, no. 29; if they wish to plead guilty, in order that consistent and mutually fair sentences be pronounced upon all the young men in this matter.

## ORDER

January 19, 1970, the rule is made absolute, subject to the discussion in the attached opinion. This sentence shall be forthwith reconsidered.

The motion to disqualify the undersigned is granted in part and denied in part as explained therein.

----

## ORDER

CURRAN, J., January 22, 1970.—By order dated January 19, 1970, following his opinion in the above matter, Charles G. Sweet, P.J., of the Court of Common Pleas of Washington County, assigned it to and directed the undersigned to reconsider the sentence imposed by Judge Harold V. Fergus on December 24, 1969. The order directed the undersigned, ". . . to take prompt action (which could not be later than

----

[3] The 30-day period for anything to be done ends Friday, January 23, 1970.

January 23, 1970) to affirm, alter, modify, suspend, reinstate, terminate, amend or rescind it, conformably to the Act of June 1, 1959, P.L. 342; 12 P.S. 1032, and as right and justice seem to him to demand."

Pursuant to the assignment, the undersigned has carefully reviewed the sentence and read the entire record of the proceedings that occurred before the sentencing judge at the time the plea and sentence were entered. Parenthetically it may be said that Judge Fergus entered into a full hearing in the matter and interviewed both the prosecuting officer and defendant at length. The police officer in this case was Sgt. Gene Fetty, of the Peters Township Police of this county in charge of the Narcotic Investigation Squad. The entire record of the proceeding, held in open court, was transcribed and filed along with all the papers in this case, which record was, and still is, available for public inspection at any time.

Following this review of the entire record and reconsideration of the sentence imposed by the Hon. Harold V. Fergus, it is the opinion of the undersigned that the sentence should be reinstated and affirmed.