Commonwealth *v.* Silverman, Appellant.

Submitted April 13, 1970. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*George H. Ross,* Public Defender, for appellant.

*Carol Mary Los* and *Robert L. Campbell,* Assistant District Attorneys, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, June 11, 1970:
Judgment of sentence affirmed.

———

DISSENTING OPINION BY HOFFMAN, J.:
Appellant was convicted by a jury of possession of heroin. After the jury had returned its verdict, the trial court questioned appellant's counsel. "THE COURT: All right. How about sentencing tomorrow afternoon? [Appellant's counsel]: That is fine, your

Honor. THE COURT: All right. We will dispose of it at 1:30 tomorrow afternoon."

The next afternoon an extended discussion took place, all of which is of record, concerning the appropriate disposition in appellant's case. At the conclusion of this discussion, the trial court addressed appellant. "THE COURT: In your case, the sentence of the Court is that you pay the costs of prosecution, that is on [the bill charging you with possession of heroin], pay the costs of prosecution and undergo imprisonment in the Western Correctional Diagnostic and Classification Center for not less than two nor more than two [sic] years. This sentence is to be suspended upon condition that the federal authorities will commit you to Lexington under the program for the rehabilitation of narcotic users, which means that you must be there under an involuntary commitment for a period of seven months and then be paroled for a period of three years; the violation [of] which will return you automatically. Do you understand that? [Appellant]: Yes, Your Honor. THE COURT: You can take up your negotiations as soon as the federal authorities notify us they are ready to accept you on those terms, and then our sentence is suspended."

The next day, however, the following appears of record. "THE COURT: All right. [Appellant], I tentatively yesterday indicated what I thought we would do as a disposition in this case, and then as you left the room, I gave some second thoughts to the matter and I wanted to determine what the situation was in your case. I was a bit leery of your professed intention to want to go to Lexington and help yourself, then I learned that you had a number of other charges against you that are current, and this morning I find that there had been a presentence report made by the Behavior Clinic of this county back in 1966. With all this additional information, I am convinced that the

sentence I intended to impose altruistically in the hopes that maybe you could be cured from the narcotic habit was not based on fact, but rather on fiction; so I called you back at this time so that we may dispose of the sentence." A second extended discussion took place, following which the trial court again imposed sentence. "The sentence of the Court is that you . . . pay a fine of 6-1/4 cents on [the bill charging you with possession of heroin] . . ., the costs of prosecution, and undergo imprisonment, that you be sent to the Western Correctional Diagnostic and Classification Center to serve not less than two nor more than five years for that charge, and that you stand committed."[1]

The bill of indictment indicates that appellant was sentenced to two to five years on the day of the second sentencing proceeding.

The foregoing, thus, presents several questions for our attention: (1) did the trial judge impose sentence the first day; (2) if so, what was that sentence; (3) if the judge did impose sentence the first day, what was the effect of the pronouncement the second day?

## I

Did the Trial Judge Impose Sentence the First Day?

As the record indicates, the trial judge twice seemed to impose sentence. On the first sentencing day, he sentenced appellant to undergo imprisonment, the term to be suspended if appellant could gain admission to the treatment program at Lexington. On the second sentencing day, he indicated that the first sentence had been tentative, although the record, so far as I can judge on review, lends no support to that view. The trial judge then imposed sentence again, this time im-

---

[1] Appellant had already been confined. He was subsequently given credit for ninety days he had spent so confined, including the day following the first sentence.

posing a prison term *without* conditionally suspending it.

On review, I believe we are bound by what the plain words of the record indicate. It seems that the trial judge sentenced appellant twice, the second sentence being imposed only because the judge had "second thoughts" about the first sentence.

## II

What Was the Sentence Imposed the First Day?

The notes of testimony indicate that the first sentence was a conditionally suspended two to two year sentence. Several factors indicate, however, that the two year maximum indicated in the notes was a typographical error. First, the sentence for the charge for which appellant was convicted is a mandatory two to five year sentence. The Drug, Device and Cosmetic Act, Act of September 26, 1961, P. L. 1664, §20, as amended, 35 P.S. §780-20. Second, even were the trial judge permitted to give a fixed sentence, imposing a two to two year sentence would not have been the likely method by which the judge would have done so. See Act of June 19, 1911, P. L. 1055, §6, as amended, 19 P.S. §1057. Finally, there is no indication on appellant's bill of indictment that gives any supoprt to a two to two year sentence.

Were there a reasonable doubt as to what sentence the judge imposed, we would be guided by *Commonwealth v. Hosendorf,* 437 Pa. 219, 263 A. 2d 439 (1970). We would be compelled to resolve any doubts we might have against the imposition of harsher punishment. Id. at 223, 263 A. 2d at 441. However, it would be unreasonable to believe that a judge would give an unlawful sentence in such an inapt manner. I would conclude, therefore, that appellant's first sentence, so far as we are concerned, was a conditionally suspended two to five year term of imprisonment.

## III

What Was the Effect of the Pronouncement the Second Day?

Having resolved these preliminary questions, we must then consider whether the trial judge erred in revoking the conditionally suspended sentence.

It has generally been held that a court may modify its sentence within term of court. See, e.g., *Commonwealth v. Mayloy*, 57 Pa. (7 P.F. Smith) 291 (1868).[2] This has been held to include the power to increase a sentence already imposed. See *Commonwealth ex rel. Gaynor v. Maroney*, 199 Pa. Superior Ct. 81, 83, 184 A. 2d 409, 410 (1962); *Commonwealth ex rel. Young v. Day*, 180 Pa. Superior Ct. 276, 279, 119 A. 2d 559, 560 (1956); *Commonwealth ex rel. Berry v. Tees*, 177 Pa. Superior Ct. 126, 129-130, 110 A. 2d 794, 795-796 (1955).

At least twice this Court has specifically held in abeyance deciding whether the power to increase a sentence within the term of court violates the guarantee against double jeopardy. In *Commonwealth ex rel. Berry v. Tees*, supra, Judge (now President Judge) WRIGHT indicated that the federal rule was contrary to that in Pennsylvania. Speaking for the Court, he said that the federal rule, notwithstanding its grounding upon the guarantee against double jeopardy, did not apply to the states but was only a restriction on the power of the federal government. Id. at 128-129, 110 A. 2d at 795. In *Commonwealth v. Vivian*, 208 Pa.

---

[2] "[T]he power exercised is not to be found based on any express authority constitutional or statutory; nor in any express right of the convicts to its exercise [in decreasing a sentence]. . . . It is an auxiliary [power] but no more." Id. at 296. If the term of court terminates within thirty days, the court may now modify a sentence within thirty days of its order. Act of June 1, 1959, P. L. 342, §1, 12 P.S. §1032 (Supp. 1970).

Superior Ct. 330, 222 A. 2d 739 (1966), Judge JACOBS, writing for the Court, specifically noted that since the guarantee against double jeopardy had not yet been applied to the states, the Court would not reconsider its holding until the Supreme Court had so applied it. Id. at 343 n.4, 222 A. 2d at 746 n.4.[3]

We can no longer avoid the implications of the guarantee against double jeopardy, since it is now binding upon Pennsylvania. *Benton v. Maryland,* 395 U.S. 784, 89 S. Ct. 2056 (1969). Those implications were clearly set forth in the Supreme Court opinion in *United States v. Benz,* 282 U.S. 304, 51 S. Ct. 113 (1931).[4] "The general rule is that judgments, decrees and orders are within the control of the court during the term at which they are made. They are then deemed to be 'in the breast of the court' making them, and subject to be amended, modified, or vacated by that court. . . . The rule is not confined to civil cases, but applies in criminal cases as well, provided the punishment be not augmented. . . . 'As a general practice, the sentence, when imposed by a court of record, is within the power of the court during the session in which it is entered, and may be amended at any time during such session, provided a punishment already partly suffered be not increased.' The distinction that the court during the same term may amend a sentence so as to mitigate the punishment, but not so as to increase it, is not based upon the ground that the court has lost control of the judgment in the latter case, but

---

[3] On review, the Supreme Court, through Mr. Justice EAGEN, also noted that the guarantee had not, as yet, been applied to the states. *Commonwealth v. Vivian,* 426 Pa. 192, 200 n.5, 231 A. 2d 301, 305 n.5 (1967).

[4] Mr. Justice ROBERTS, in a concurring opinion in *Commonwealth v. Vivian,* note 3 supra at 202, 231 A. 2d at 306, indicated that he would apply the holding of *Benz* in cases where there is greater punishment in a second sentence.

upon the ground that to increase the penalty is to subject the defendant to double punishment for the same offense in violation of the Fifth Amendment to the Constitution, which provides that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb' " Id. at 306-307, 51 S. St. at 114. See *Borum v. United States,* 409 F. 2d 433, 440-441 (D.C. Cir. 1967), cert. denied, 395 U.S. 916, 89 S. Ct. 1765 (1969); *Tatum v. United States,* 310 F. 2d 854, 855 (D.C. Cir. 1962); *United States v. Rosenstreich,* 204 F. 2d 321, 321-322 (2d Cir. 1953) (FRANK, J.); cf. *Oxman v. United States,* 148 F. 2d 750, 752-753 (8 Cir.), cert. denied, 325 U.S. 887, 65 S. Ct. 1569 (1945); *Acme Poultry Corp. v. United States,* 146 F. 2d 738, 739 (4 Cir. 1944), cert. denied, 324 U.S. 860, 65 S. Ct. 865 (1945).

The rationale for such a rule has been best stated in the following passage from *Ex parte Lange,* 85 U.S. (18 Wall.) 163, 173 (1874): "For of what avail is the constitutional protection against more than one trial if there can be any number of sentences pronounced on the same verdict? Why is it that, having once been tried and found guilty, he can never be tried again for that offense? Manifestly it is not the danger or jeopardy of being a second time found guilty. It is the punishment that would legally follow the second conviction which is the real danger guarded against by the Constitution. But if, after judgment has been rendered on the conviction, and the sentence of that judgment executed on the criminal, he can be again sentenced on that conviction to another and different punishment, or to endure the same punishment a second time, is the constitutional restriction of any value? Is not its intent and its spirit in such a case as much violated as if a new trial had been had, and on a second conviction, a second punishment inflicted?" See *In re Bradley,* 318 U.S. 50, 63 S. Ct. 470 (1943). See also

Sentencing Alternatives and Procedures, A.B.A. Project on Minimum Standards for Criminal Justice §6.1 (b). Notwithstanding its secondary status in *Lange,* of great importance, too, is the subjection of the defendant twice to the anxiety and trauma of the sentencing process. Both the possibility of double punishment and the anxiety of double sentencing violate the guarantee.

Reasons other than constitutional make it important that a trial judge not be permitted to increase a sentence whose service has already begun. As I said with respect to the rule that prohibits like increases following the term of court, "[w]e want the trial judge to take great care in sentencing. He should give adequate consideration to the many factors which should influence his decision, among which are the rehabilitation of the defendant and deterrence to the general population. The knowledge that his decision will be undone only under exceptional circumstances will insure that care. Moreover, the rule prevents extraneous considerations from affecting the trial judge's sentencing. The decision as to sentence remains the trial judge's until made public. Once made public, the rule prevents easy attack thereupon, a goal which insures both a just decision to the defendant and the integrity and independence of the judiciary." *Commonwealth v. Allen,* 217 Pa. Superior Ct. 59, 266 A. 2d 799 (1970) (dissenting opinion).

For these reasons, I would rule that we can no longer maintain our traditional holding that a trial judge can increase a sentence within term of court, once the defendant has begun its service.[5]

In the instant case, there is no doubt that appellant's sentence was increased. His first sentence was sus-

---

[5] I would not decide whether a defendant on bail following sentence and pending appeal or on probation has begun "service" so as to come within this ruling.

pended conditioned upon his acceptance into the treatment program in Lexington, Kentucky. Following that program, he was to be paroled for three years. Instead of that sentence, he was to be incarcerated for two to five years. Although he was not as yet accepted into the program, there was the possibility that he would have been.[6] If so, he would have been treated and then released. It is evident that such a program would have been less restrictive of liberty than incarceration.

I would reverse the order of the lower court and reinstate appellant's first sentence.

CERCONE, J., joins in this dissenting opinion.

[6] Hence, this case is not at all parallel to *Commonwealth v. Vivian*, note 3 supra, where the condition of the conditional sentence was not fulfilled.