Commonwealth *v.* Allen, Appellant.

Argued March 20, 1970. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*John W. Packel,* Assistant Defender, with him *Melvin Dildine,* Assistant Defender, and *Vincent J. Ziccardi,* Acting Defender, for appellant.

*James D. Crawford,* Deputy District Attorney, with him *Albert L. Becker,* Assistant District Attorney,

*Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, June 11, 1970:
Judgment of sentence affirmed.

---

DISSENTING OPINION BY HOFFMAN, J.:
Appellant was indicted on two bills: No. 771 December Term, 1965, charging assault and battery; No. 772 December Term, 1965, charging assault with intent to rob and robbery. Appellant was subsequently tried on both bills before Judge KALLICK, who found appellant guilty on both bills. Judge KALLICK suspended sentence on No. 771 and sentenced appellant to five to ten years on No. 772. Appellant then filed motions for new trial, which motions were granted. He then pleaded guilty to both bills before Judge STOUT. Judge STOUT sentenced him to two-and-a-half to eight years on No. 771 and one to two years on No. 772, the sentences to run concurrently.

The notes of testimony of the sentencing read as follows: "THE COURT: On Bill No. 771, the sentence of the Court is not less than two and a half years nor more than eight years. On Bill No. 772, the sentence of the Court is not less than one year nor more than two years, to run concurrently." The sentences, as recorded on the bills themselves, are *identical* with those announced orally.

Eleven months thereafter, appellant filed a petition for post-conviction relief, alleging among other things that his sentence on Bill No. 771 was unlawful. Three months later, Judge STOUT held a hearing. At the conclusion thereof, she said: "Obviously I didn't intend to give him two and a half to eight years for simple assault and battery. I will dismiss the petition, and cor-

rect the record, and put the sentence on the right bill." The record was then amended, so that the sentence on Bill No. 771 reads one to two years to run concurrently with the sentence of two-and-a-half to eight years on Bill No. 772.

Two questions thus merit our attention. (1) Could Judge STOUT amend the record as she did, after the term had passed? (2) If she could not, what disposition should this Court make with regard to Bill No. 771?

# I

It has been held for many years that a trial court cannot modify its sentence once the term of court has passed. "[T]here is no case which shows that an inherent power has grown up in the courts to interfere with criminal sentences after the term when the record has ceased to be in the breast of the court, and has become a solemn matter on record." *Commonwealth v. Mayloy,* 57 Pa. (7 P.F. Smith) 291, 296 (1868). This rule has been subject to certain exceptions, of limited scope. When the sentence imposed is unlawful, the trial court, even after the term of court, can revoke its prior sentence and impose a legal one. *Commonwealth ex rel. Paige v. Smith,* 130 Pa. Superior Ct. 536, 546-547, 198 A. 812, 817 (1938). Where the clerk of court has erred in entering the sentence of court in the docket, the trial court can order that it be corrected to conform to what the court had imposed. *Commonwealth v. Meyer,* 169 Pa. Superior Ct. 40, 42-43, 82 A. 2d 298, 300 (1951).

We have been reluctant, however, to allow more than correction of unlawful sentences or clerical mistakes. Such reluctance has been demonstrated, for example, in cases dealing with lumped sentences. In *Commonwealth v. Harrison,* 142 Pa. Superior Ct. 453, 16 A. 2d 665 (1940), the trial court lumped the penal-

ties of four counts and ordered the defendant to serve one sentence which was greater than permitted by law on any one count. On remand from this Court, the trial court attempted to correct its error by imposing separate sentences on two of the counts, each of them to run *consecutively*. By so doing, the trial court hoped to achieve what it declared to be its original intention, i.e., to sentence the defendant to a given minimum and maximum. On review, this Court reversed.

"[T]he original [order], considered as a sentence on one count, was voidable because excessive; viewed as a sentence on two or more counts it was voidable for the same reason. *Regardless of the evident intention of a lumping sentence,* the penalties of a number of counts cannot have a cumulative effect. The only method recognized in law for the accomplishment of that result, requires separate orders on separate counts with the express direction, in apt language, that the sentences shall take effect consecutively. *Regardless of form, without that definite direction, the sentences operate concurrently.* . . . [S]ince, at most, a lumped sentence can be considered the equivalent of separate concurrent sentences and *the penalties imposed cannot be increased to give them consecutive effect after the close of the term,* in practice a voidable lumped sentence is amended to comply with the law by reducing the penalty to the maximum of one count alone." *Commonwealth v. Harrison,* supra at 455-456, 16 A. 2d at 667 [emphasis added].

Other cases evidencing our reluctance are those which deal with resentencing following the invalidation of part of a string of consecutive sentences. In *Commonwealth v. Downer,* 161 Pa. Superior Ct. 339, 53 A. 2d 897 (1947), the trial court sentenced the defendant on four indictments, each sentence to run consecutively. On review, this Court invalidated the first and last of these sentences and remanded for resentencing.

The trial court then suspended sentence on the third indictment and increased the sentence on the second indictment, so that the defendant would serve "the same total minimum time as he would have been obliged to serve had this Court not held the sentences upon [the first and last bills] to be invalid." Id. at 341, 53 A. 2d at 899. On review, this Court again reversed.

We held that, except for a very few exceptions, a trial court could not modify a sentence after the term had passed. We noted two exceptions. One was the power to revoke an invalid sentence and impose a legal one in its stead. The other was the power, so the Court believed, to indefinitely suspend sentence and then, at some future time, impose a sentence.[1] Since, however, the trial court's action was not founded upon any exception to the general rule, we modified its order so that the sentence on the second indictment reverted to its original length.

The reasons for such inhibitions upon the trial court are not hard to fathom. We want the trial judge to take great care in sentencing. He should give adequate consideration to the many factors which should influence his decision among which are the rehabilitation of the defendant and deterrence to the general population. The knowledge that his decision will be undone only under exceptional circumstances will insure that care. Moreover, the rule prevents extraneous considerations from affecting the trial judge's sentencing. The decision as to sentence remains the trial judge's until made public. Once made public, the rule prevents easy attack thereupon, a goal which insures both

---

[1] Even this exception to the general rule was nullified in *Commonwealth v. Duff*, 414 Pa. 471, 200 A. 2d 773 (1964). See *Commonwealth ex rel. Lepera v. Rundle*, 205 Pa. Superior Ct. 251, 254, 208 A. 2d 874, 875 (1965) (WRIGHT, J.).

a just decision to the defendant and the integrity and independence of the judiciary.

State precedent and good policy are not the only considerations which affect our decision. Several Federal Courts of Appeals have reviewed trial court modifications of sentence. Their decisions, founded upon the guarantee against double jeopardy, constitutionalize much of what I have indicated above. Their holdings must be given great weight, since the guarantee against double jeopardy is binding upon the states. *Benton v. Maryland,* 395 U.S. 784, 89 S. Ct. 2056 (1969).

In *United States v. Sacco,* 367 F. 2d 368 (2d Cir. 1966), the trial court sentenced the defendant on two separate counts. On the first count, the court imposed a sentence of five years, within the permissible maximum of ten years. On the second count, the court imposed a sentence of seven years, beyond the permissible maximum of five years. After serving eight months of his sentence, the defendant moved to have it corrected. His motion was denied. The court, however, granted the Government's cross-motion to transpose the original sentences imposed on the two counts to bring the seven year sentence with the ten year permissible maximum of the first count. On appeal, the Court of Appeals for the Second Circuit reversed.

The Court indicated that the general rule was that "increasing a sentence after the defendant has commenced to serve it is a violation of the constitutional guaranty against double jeopardy."[2] Id. at 369. In its view, the facts of the case presented the question "whether an exception should be made to the general rule where . . . the increase is for the purpose of carrying out what the sentencing judge says was his origi-

---

[2] This rule is discussed in more detail in my dissenting opinion in *Commonwealth v. Silverman,* 217 Pa. Superior Ct. 68, 266 A. 2d 794 (1970), with respect to its effect on the term-of-court rule.

nal intention . . . ." Ibid. In response, the Court said: "We are of the opinion that a judge should not be permitted to increase a sentence clearly and explicitly imposed, after the prisoner has begun to serve it, even though the judge later recollects that he had intended at the time to decree a longer sentence for a conviction on a particular count but did not do so because he had inadvertently confused it with another count. . . . The possibility of abuses inherent in broad judicial power to increase sentences outweighs the possibility of windfalls to a few prisoners." Id. at 369-370.

In *Kennedy v. United States,* 330 F. 2d 26 (9th Cir. 1964), the trial court sentenced a defendant to a number of concurrent five and ten year sentences. Two months after the defendant commenced service of his sentences, it was discovered that the ten year sentences were unlawful. The ten year sentences were imposed on counts whose maximum was five years. The court modified the sentences to five years but made two of them consecutive to the original five year sentences. On review, the Court of Appeals concluded that the trial court had increased defendant's punishment and thereby violated double jeopardy. Under similar facts, the Court of Appeals for the Sixth Circuit concluded that a trial court, despite its initial intention, could not increase a sentence "after its original imposition and start of service" because of the guarantee against double jeopardy. *Duggins v. United States,* 240 F. 2d 479, 482 (6th Cir. 1957). See also *United States v. Magliano,* 336 F. 2d 817 (4th Cir. 1964); *Ekberg v. United States,* 167 F. 2d 380 (1st Cir. 1948).

Judge FREEDMAN has recently capsulized the double jeopardy argument as follows: "Added punishment under a valid sentence simply because the defendant has successfully shown the invalidity of the sentence under another count is a plain violation of the constitutional protection. It may not be justified because the sen-

tencing judge would have imposed the higher penalty if he had been aware of the invalidity of the sentence imposed on the other counts." *United States v. Welty*, 426 F. 2d 615 (3d Cir. 1970).

Applying these holdings to the instant case, I cannot sustain the lower court's transposing of appellant's sentences. Despite what it indicates was its intention when originally sentencing, it cannot be permitted a luxury which would work grave consequences for many defendants. It would encourage hasty sentencing. It would permit extraneous influences upon a judge's decision. Finally, it would permit second punishments after the defendants have begun their first, thus violating double jeopardy.

I would conclude, therefore, that the two-year sentence on Bill No. 772 must remain as originally imposed. The two-and-a-half to eight year sentence on Bill No. 771, of course, is unlawful and would have to be modified to be within the permissible maximum.

## II

Because of the peculiar circumstances of this case, a remand of the record for resentencing on Bill No. 771 without direction, would not be sufficient to dispose of the problems inherent in the sentencing on that bill. Since appellant first received a suspended sentence on Bill No. 771, due process requires that appellant receive no more than a suspended sentence on retrial unless "identifiable conduct on the part of [appellant] occurring after the time of the [first] sentencing proceeding" justifies a more severe sentence.[3]

"It can hardly be doubted that it would be a flagrant violation of the Fourteenth Amendment for a state tri-

---

[3] Even if this Court disagrees with I, the lower court's transposed sentence must be justified.

al court to follow an announced practice of imposing a heavier sentence upon every reconvicted defendant for the explicit purpose of punishing the defendant for his having succeeded in getting his original conviction set aside. . . . Due process of law . . . requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge. In order to assure the absence of such a motivation, . . . whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." *North Carolina v. Pearce,* 395 U.S. 711, 723-726, 89 S. Ct. 2072, 2080-2081 (1969).

I would remand the record for resentencing on Bill No. 771 in light of the above. I would reverse the order of the lower court on Bill No. 772 and reinstate the original sentence.

SPAULDING, J., joins in this dissenting opinion.