Commonwealth *v.* Silverman, Appellant.

Submitted September 28, 1970.   Before Bell, C. J., Jones, Cohen, Eagen, O'Brien, Roberts and Pomeroy, JJ.

*Michael Louis Silverman,* appellant, in propria persona.

*Carol Mary Los* and *Robert L. Campbell,* Assistant District Attorneys, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, March 18, 1971:

On February 19, 1969, Michael Louis Silverman was convicted in a nonjury trial in Allegheny County of possessing heroin in violation of The Drug, Device and Cosmetic Act of September 26, 1961, P. L. 1664, §20, as amended, 35 P.S. §780-20.

On February 20, 1969, Silverman was called before the trial judge for sentence, and, as disclosed by the record, a lengthy colloquy ensued concerning the defendant's previous background and a proper disposition of the case. The judge then addressed Silverman and said: "The Court: In your case, the sentence of the Court is that you pay the cost of prosecution, that is on [the bill charging you with possession of heroin], pay the cost of prosecution and undergo imprisonment in the Western Correctional Diagnostic and Classification Center for not less than two or more two [sic] years.[1] This sentence is to be suspended upon condition that the federal authorities will commit you to Lexington under the program for the rehabilitation of narcotic users, which means that you must be there under an involuntary commitment for a period of seven months and then be paroled for a period of three years; the violation [of] which will return you automatically. Do you understand that? [Appellant]: Yes,

---

[1] While the transcribed notes of the proceeding filed of record state "not less than two or more two years" this is probably a typographical error. The Act of 1961, specifically provides for a mandatory sentence of from two to five years.

Your Honor. The Court: You can take up your negotiations as soon as the federal authorities notify us they are ready to accept you on those terms, and then our sentence is suspended."

On February 21st, Silverman was called before the trial judge again, and the judge said he had some "second thoughts" about his action of the previous day, and, in the meantime, had received a copy of a report made by the county's Behavior Clinic in 1966, and also had been informed of other criminal charges currently pending against Silverman. Whereupon, a new sentence was imposed directing that Silverman serve a term of imprisonment in the Western Diagnostic and Classification Center of not less than two nor more than five years, upon which it was directed that he stand committed. Silverman filed an appeal to the Superior Court which, subsequently, affirmed the judgment of sentence without opinion. Judge HOFFMAN filed a dissenting opinion in which Judge CERCONE joined. See 217 Pa. Superior Ct. 68, 266 A. 2d 794 (1970). We granted allocatur and now reverse.

The narrow, but important, question presented is whether Silverman was subjected to double jeopardy in violation of the double jeopardy clause in the Fifth Amendment to the United States Constitution.

For many years the courts in Pennsylvania ruled that the proscription in the United States Constitution against double jeopardy was not binding on the states, and that the double jeopardy provision in the Pennsylvania Constitution (Art. I, §10) applied only to capital offenses. See *Commonwealth v. Warfield*, 424 Pa. 555, 227 A. 2d 177 (1967) and cases cited.

Premised upon the foregoing conclusions, it was ruled that Pennsylvania trial courts had the power to modify or increase a sentence imposed on a criminal defendant if such change were effected during the same

term of court in which the original sentence was imposed. See *Commonwealth v. Gallagher*, 200 Pa. Superior Ct. 136, 186 A. 2d 842 (1962).[2]

In 1959 the Pennsylvania Legislature passed a statute, the Act of June 1, 1959, P. L. 342,[3] modifying the previously established "term of court" rule so as to extend the power of a trial court to reconsider and change a sentence for a period of thirty days, if the term of court terminated prior to the thirty-day period.[4]

However, the Supreme Court of the United States in *Benton v. Maryland*, 395 U.S. 784, 89 S. Ct. 2056 (1969) ruled that the double jeopardy prohibition in the United States Constitution is binding on the states,

---

[2] However, an exception to this rule was recognized, i.e., if the sentence imposed were fully executed, then the power of the court to increase and subject the defendant to additional punishment was extinguished. See *Commonwealth v. Penna. R.R. Co.*, 41 Pa. Superior Ct. 29 (1909).

[3] The Act of June 1, 1959, P. L. 342, §1, 12 P.S. §1032 (Supp. 1970) pertinently provides: "In any civil, criminal or equitable proceeding in which the court has heretofore been vested with the power, jurisdiction and authority to alter, modify, suspend, reinstate, terminate, amend or rescind, any order, decree, judgment or sentence only during the term of court in which the order, decree, judgment, or sentence, was entered of record the court in addition to such power, jurisdiction and authority shall hereafter have the same power, jurisdiction and authority to alter, modify, suspend, reinstate, terminate, amend or rescind the order, decree, judgment or sentence for a period of thirty days subsequent to the date of entering of record the order, decree, judgment or sentence in any instance where the term of court shall terminate prior to such thirty day period; Provided, That all parties in interest including the district attorney in criminal cases, are notified in advance of such proposed alteration, modification, suspension, reinstatement, termination, amendment or rescission."

[4] For the purposes of this opinion, we need not decide whether or not the Act of 1959, supra, may be construed so as to empower a trial court to increase a sentence imposed on a criminal defendant.

and, hence, our prior decisions to the contrary must now be disregarded.

The question follows: Does the modification of a sentence imposed on a criminal defendant which increases the punishment constitute further or double jeopardy? Our research indicates that the United States Supreme Court has not as yet said so specifically, but we are persuaded that this is so only because the precise question has yet to be ruled upon.

In *Ex parte Lange,* 85 U.S. (18 Wall.) 163, 173, 21 L. Ed. 872 (1874), the court pertinently stated: "For of what avail is the constitutional protection against more than one trial if there can be any number of sentences pronounced on the same verdict? Why is it that, having once been tried and found guilty, he can never be tried again for that offense? Manifestly it is not the danger of jeopardy of being a second time found guilty. It is the punishment that would legally follow the second conviction which is the real danger guarded against by the Constitution. *But if, after judgment has been rendered on the conviction, and the sentence of that judgment executed on the criminal, he can be again sentenced on that conviction to another and different punishment, or to endure the same punishment a second time, is the constitutional restriction of any value?* Is not its intent and its spirit in such a case as much violated as if a new trial had been had, and on a second conviction, a second punishment inflicted?

"The argument seems to us irresistible, and we do not doubt that the Constitution was designed as much to prevent the criminal from being twice punished for the same offense as from being twice tried for it." [Emphasis throughout ours.]

Also in *United States v. Benz,* 282 U.S. 304, 306-07, 51 S. Ct. 113, 114 (1931), where the Court faced the question of whether a federal court had the power to

amend, during the term of court in which it was imposed, a sentence in a criminal case by shortening the period of imprisonment after part of it has been served, the Court asserted:

"The general rule is that judgments, decrees and orders are within the control of the court during the term at which they were made. They are then deemed to be 'in the breast of the court' making them, and subject to be amended, modified, or vacated by that court [citation omitted]. The rule is not confined to civil cases, but applies in criminal cases as well, *provided the punishment be not augmented.* Ex parte Lange, 18 Wall. 163, 167-174; Basset v. United States, 9 Wall. 38. In the present case the power of the court was exercised to mitigate the punishment, not to increase it, and is thus brought within the limitation. Wharton, in Criminal Pl. and Pr. 9th ed., §913, says: 'As a general practice, the sentence, when imposed by a court of record, is within the power of the court during the session in which it is entered, and may be amended at any time during such session, provided a punishment already partly suffered be not increased.'

"The distinction that the court during the same term may amend a sentence so as to mitigate the punishment, *but not so as to increase it,* is not based upon the ground that the court has lost control of the judgment in the latter case, *but upon the ground that to increase the penalty is to subject the defendant to double punishment for the same offense* in violation of the Fifth Amendment to the Constitution, which provides that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb.' This is the basis of the decision in Ex parte Lange, supra." [Emphasis throughout ours.]

The above quoted language in *Benz,* may properly be classified as dictum, since the facts then before the

court involved only the power of a court to *decrease* a sentence. The before quoted language in *Ex parte Lange* is in the same category, since the factual situation presented to the court therein was a modification of the original sentence after that sentence had been *fully executed*. Nonetheless, it is the strongest kind of dictum, and so clear and unequivocal, that there is no doubt in our minds that if the issue is ever reached, the United States Supreme Court will rule that a modification of a sentence imposed on a criminal defendant which increases the punishment is double jeopardy, and we now so rule. Therefore, even if it were assumed that the Act of 1959, supra, intended to give a court the power to increase a sentence imposed on a criminal defendant provided such were effectuated within thirty days, this, in our view, would be inconsistent with the federal constitutional prohibition against double jeopardy.[5]

The case of *North Carolina v. Pearce,* 395 U.S. 711, 89 S. Ct. 2072 (1969) does not compel a different conclusion. *Pearce* dealt with the problem of reconviction and resentencing where on appeal by the defendant, the original sentence had been set aside. As the Court therein stated: "[W]e deal here not with increases in existing sentences, but with the imposition of wholly new sentences after wholly new trials." At 395 U.S. 722, 89 S. Ct. 2079. In such a case the defendant by appealing the original sentence voluntarily assumes the risk of a new trial and all the attending repercussions. See *United States v. Tateo,* 377 U.S. 463, 84 S. Ct. 1587

---

[5] The Fifth Amendment's double jeopardy clause represents a constitutional policy of finality and protects the defendant from continuing distress. See *United States v. Jorn,* 400 U.S. 470, 91 S. Ct. 547 (1971), and *Green v. United States,* 355 U.S. 184, 78 S. Ct. 221 (1957). See also, 75 Yale L. J. 262 (1965). It bars placing a defendant in "jeopardy" a second time even though the first prosecution was aborted by an abuse of discretion on the part of the trial court. See *United States v. Jorn,* supra.

(1964), and *United States v. Ball*, 163 U.S. 662, 16 S. Ct. 1192 (1895).

Herein, on February 21st, the day the second sentence was imposed, the trial judge indicated that the sentence imposed on February 20th was a "tentative" one. While it is true that the suspension of the February 20th sentence was conditioned upon Silverman's acceptance to the Lexington rehabilitation hospital,[6] the sentence, as recorded, indicates the imposition of no other conditions, or that it was "tentative" in any sense, except for the condition before noted, and we are bound by the record.[7]

Finally, we are unpersuaded that *Commonwealth v. Hosendorf*, 437 Pa. 219, 263 A. 2d 439 (1970) is apposite here.[8] Unlike the situation in *Hosendorf* the record of the proceedings on February 20th in the instant case leaves no doubt as to the sentence then imposed.

The order of the Superior Court is reversed; the judgment of sentence imposed in the trial court on February 21, 1970, is vacated; and, the judgment of sentence imposed on February 20, 1970, is reinstated.

Mr. Chief Justice BELL dissents.

Mr. Justice COHEN took no part in the decision of this case.

---

[6] There was no opportunity given to effectuate this condition before the second sentence was imposed.

[7] Under the facts before us, it is unnecessary to reach and decide the question of whether it is constitutionally permissible for a court to increase a truly expressed tentative sentence when the conditions stipulated do not materialize. But see, *Commonwealth v. Vivian*, 426 Pa. 192, 231 A. 2d 301 (1967).

[8] The recorded opinion in *Hosendorf*, supra, did not express the views of a majority of the Court, and, therefore, is not decisional.