Dunseath and wife *v.* Pittsburg, Allegheny & Manchester Traction Co., Appellant.

*Negligence—Street railways—Infants.*

In an action against a street railway company to recover damages for the death of plaintiff's child, it is proper to submit to the jury the question of defendant's negligence where three witnesses testify that the car which killed the child was running at a high rate of speed, that their attention was particularly attracted by the unusual speed, and that it ran thirty-five feet beyond the crossing where the child was killed, before it could be stopped.

*Negligence—Contributory negligence—Infant—Duty of parents.*

Whether a mother suffers a child to wander on the street is a matter of fact, and is the subject of evidence, and this must depend upon the care which she took of her child. Such care must be reasonable care dependent upon the circumstances, and is a fact for the jury : Long v. Philadelphia & Reading R. R., 75 Pa. 257, followed.

Plaintiff's child, a boy five years old, was killed at a public crossing by

an electric car near his home.  There was evidence that the mother, just previous to the accident, was in the kitchen of the house washing the baby, and that she told the boy who was killed not to go away.  The boy, however, left the house without the mother knowing it, and going into the street was killed by a trolley car running at a high rate of speed.  *Held,* that the case was for the jury.

Argued Nov. 6, 1893.  Appeal, No. 248, Oct. T., 1893, by defendant, from judgment of C. P. No. 1, Allegheny Co., Sept. T., 1892, No. 64, on verdict for plaintiffs, Robert Dunseath and wife.  Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.  Affirmed.

Trespass for death of plaintiff's child.  Before COLLIER, J.

At the trial it appeared that, on Feb. 22, 1892, plaintiff's child, Earle Dunseath, a boy five years old, was killed by an electric car of defendant company.  The child was killed at the crossing of Franklin street and Midwell street, about two hundred feet from his home.  It was not seriously denied that the car was going at an unusually high rate of speed.  A few minutes before the accident occurred the mother of the child was in the kitchen of her house washing her baby, and she told the boy who was killed not to go away.  The boy, however, slipped out without his mother's knowledge, and was run over and killed by the street car.

Martha Dunseath, one of the plaintiffs, testified : " Q. You are one of the plaintiffs ?  A. Yes, sir.  Q. You are the mother of the child that they killed ?  A. Yes, sir.  Q. How far did you live from the place where this child was killed ?  A. About half a square.  Q. State how long before the child was killed had it been that you saw him.  A. I hadn't missed him gone only a few minutes.  Q. What were you doing that afternoon about that time ?  A. My sister-in-law was sick and I was going to go down to her house and get supper ready for her.  Objected to as irrelevant.  Q. What did you do ?  A. I washed the little boy and cleaned him up, and then we were going down to my sister-in-law's, and then I was going to wash the baby and we were going down there, and I hadn't missed him gone until the lady came to the door and told me he was killed, and I had only washed this baby's face (indicating child) and I came and I was going to change the clothes when the lady came to the

door and told me my boy was killed. Q. You had dressed the boy that was killed ? A. I had dressed the boy that was killed ; and then I had commenced to dress this boy. Q. What had you done to this boy up to the time you were informed of the other boy's death ? A. I had only washed his face and combed his hair and changed his underdrawers. Q. Did you know then what had become of the boy ? A. No, I hadn't missed him. Q. State, if you can, about how long it was from the time that you finished dressing this boy called Earle that was killed to the time that you were informed of his death. A. I should think it was not fifteen minutes, it couldn't have been. Q. How old was the boy ? A. He was five years and twenty days. Q. State whether you permitted him to go out, or whether he escaped ? By the Court : How did he get out ? A. I couldn't tell how he got out. By Mr. Wise : How did he get out ? A. I couldn't tell how he got out. He slipped my eye and went out, but by no means I didn't allow my children to play on the street. I shouldn't finish washing the dishes ; again I looked for them several times."

Lottie Algeo testified : " A. After the child was washed and dressed it passed me in the hall, and Mrs. Dunseath told her child not to go away. I went on upstairs ; was only there a few minutes when I heard the mother scream. I came downstairs and learned that the child had been struck with the car. Q. Do you know what she was doing ? A. She was washing and dressing her baby. Q. That is the other child ? A. The other child. Cross-examination by Mr. Neeper : Q. Where did you see the child when it was told not to go away ? A. In the hall. Q. Was the door open from the hall into the street ? A. Yes, sir. Q. Was it unlocked ? A. It would certainly be unlocked when it was open. Q. It was open and the child could pass out without obstruction ? A. Yes, sir. Q. Was that the ordinary condition of the door ; did it stand open ? A. Pretty much all the time. There was two families used that door. Q. What did the child do ? A. Just passed me in the hall. Q. Did you see it go out ? A. I seen it go to the door. Q. You saw it go to the door ? A. Yes, sir. Q. Then what did you do ? A. I turned around and went upstairs. I couldn't say whether the child went up street or down. Q. Did it go out on the street ? A. Went out of the door. Q. Where was the

mother when it went out of the door?  A. She was in the kitchen washing the baby.  Q. And all she did was to tell the child not to go away?  A. She told the child not to go away."

The court charged in part as follows:

" If you find the defendant was guilty of negligence, then you will come to the next question, which is, was the mother reasonably careful of that little child when it got out on this day?  Because the law of our state, the law of civilization and the law in this case is, that any mother, whether she is poor or rich, or high or low, must not, voluntarily, let a little child five years old go out into danger on a street.  That will never do, because if we do that voluntarily we are committing a sin against ourselves, against our children and against God.  [Now, the question is whether or not this lady negligently let the child escape from the house.  It had no business out on the tracks of the traction company.  A little five year old child ought not to be allowed to go there.  The mother says she did not allow it; that she was washing the little baby, and the door was open, and this child went into the hall; that she told him not to go away, and in a few moments, or a short time, she heard the child was killed.  It is contended that this was not exercising due care.  You will say whether it was or not.  She was bound to use reasonable care, such as a prudent woman under the circumstances would use, to prevent the child from getting out.  It is contended, because the door was open and the mother did no more than just say, ' Don't go out,' that that was negligence.  You will determine from the evidence in the case whether she did or did not exercise reasonable care in protecting her child.  If she did not she cannot recover.] [1]   It is a well settled rule that if a person allows a little child to run into the street and go where there is danger, and where they know there is danger from the cars, and the child is injured, they cannot recover.  If you think the mother used all the care that was proper under the circumstances, then she could recover, provided it was not an unavoidable accident in the first place."

Defendant's points were among others as follows:

" 2. [The fact that a child between five and six years old who has parents is found alone unprotected upon a street railway where electric cars are passing constantly, or is found in such situation in charge of another child of similar age, is presump-

tive evidence that he was so exposed voluntarily or negligently by his parent,] and if such negligence contributed to his death, then the parents may not recover, and the verdict should be for the defendant. *Answer:* The part in brackets is affirmed. The balance is refused." [2]

4. Request for binding instructions. Refused. [3]

Verdict and judgment for plaintiffs for $699.

*Errors assigned* were (1–3) above instructions, quoting them.

*A. M. Neeper,* for appellant, cited: R. R. v. Yeager, 73 Pa. 125; Patterson's Railway Accident Law, p. 424; Traction Co. v. Bernheimer, 125 Pa. 619; Fischer v. Ferry Co., 124 Pa. 154; R. R. v. Spearen, 47 Pa. 304; Ry. v. Connell, 88 Pa. 544; Chilton v. Traction Co., 152 Pa. 426; R. R. v. Long, 75 Pa. 265; Smith v. Ry., 92 Pa. 454; Ry. v. Pearson, 72 Pa. 172; Glassey v. Ry., 57 Pa. 172.

*J. H. Wise, W. T. Minor* with him, for appellee, cited: Schnur v. Traction Co., 153 Pa. 30; Ry. v. Pearson, 72 Pa. 169; Rauch v. Lloyd & Hill, 31 Pa. 358; R. R. v. Kelly, 31 Pa. 372.

OPINION BY MR. JUSTICE McCOLLUM, April 16, 1894:

This is an action by parents to recover the money value of their child's life which they allege was taken on the 22d of February, 1892, through the negligence of the appellant company in running its car at an unusual and dangerous rate of speed, and without giving proper signals, at or near the intersection of Franklin and Bidwell streets in Allegheny City. The trial in the court below resulted in a verdict in favor of the plaintiffs for $699. If there was evidence sufficient to justify a finding that the boy's death was caused by the negligence of the appellant company, and the learned court below did not err in refusing to hold that the negligence of the parents contributed thereto, the company cannot reasonably complain of the verdict, because the amount of it does not indicate that the jury were affected by sympathy or prejudice in rendering it. In a clear and concise charge the learned judge carefully limited the jury to such matters as were proper for their consideration in ascertaining the damages, and the verdict in this particular fairly conformed to the instructions. We turn, then, to

the evidence to see if it was sufficient to support the plaintiff's contention that the death of their child was due, wholly or partially, to the company's negligence, and if we conclude that it was, to inquire whether there was anything in it which would have justified the learned judge in holding that their own negligence in caring for the child was responsible in some degree for the sad occurrence.

It appears from the evidence produced by the plaintiffs that at the time of the accident the car was running at a high rate of speed and that the brake was not applied to check its progress nor the bell rung to give notice of its approach, until the boy was struck by it. Mrs. Hartman testified that she was standing about twenty-five feet from the place where he was struck, and that when she first saw the car it was a square and a half away from her, and "coming very fast;" that the brake was applied and the bell rung after, but not before, he was struck. In her statement respecting the speed of the car and the ringing of the bell she was fully corroborated by the testimony of M. C. Golden and Mrs. Owsten. The latter said: "I, saw the car coming down very rapidly, as though it had broke away or something; it looked to me like it had broke away and was uncontrollable, the way it went." These witnesses either resided upon or in plain view of the street on which the railway track was located, and were accustomed to seeing the cars running upon it; the speed of this car was so great that their attention was particularly attracted by it before the occurrence of the accident, and it ran about thirty-five feet after the boy was struck by it before it could be stopped. Their testimony in relation to the speed of the car and the distance it ran after the boy was struck by it was corroborated by that of McClelland, the company's only witness, who testified, inter alia, that he was standing in the car and saw the accident; that it was crowded and "seemed to be going pretty rapidly, eight or nine miles an hour;" that it struck the boy at or near the crossing and that after it struck him it "slid along thirty-five feet" before the motorman could stop it. Surely this evidence authorized an inference that the car was running at an unusual and dangerous rate of speed at the time of the accident, and required that the question of the company's negligence in connection with it should be submitted to the jury.

We cannot assent to the proposition that the court should have taken the case from the jury on the ground that the presence of the boy on the street, under the circumstances shown, constituted negligence on the part of the plaintiffs which contributed to his death. It is contended by the appellant company that the boy was on the street by permission of his parents, or that they failed to take proper precautions to prevent his going there, and it bases its contention in this particular on the testimony of his mother and Miss Algeo. It is not necessary to include their testimony or any portion of it in this opinion. We have carefully read and considered the whole of it and are clearly satisfied that the question of the alleged contributory negligence of the plaintiffs was for the jury and not for the court to decide.

It seems to us that there is a striking resemblance between this case and Long et ux. v. The Philadelphia and Reading Railroad Company, 75 Pa. 257. In that case, as in this, the plaintiffs claimed that their child's death was attributable to the company's negligence, while the latter contended there was no negligence on its part and that there was contributory negligence on the part of the parents. In that case Chief Justice AGNEW, delivering the opinion of this court, said: " To suffer a child to wander on the street has the sense of *permit*. If such permission or sufferance exist it is negligence. This is the assertion of a principle. But whether the mother did suffer the child to wander is a matter of fact and is the subject of evidence, and this must depend upon the care she took of her child. Such care must be *reasonable* care dependent on the circumstances. This is a fact for the jury." The resemblance between the two cases in respect to the questions involved and the evidence relied on to decide them is so close that the language we have quoted applies to this case with the same pertinency and force as to the case in which it was used.

The appellant company's second point was inartificially drawn and somewhat obscure, and as we think it admitted of a construction which assumed that there was negligence on the part of the plaintiffs which caused or contributed to the death of their child, we cannot say there was error in the answer to it.

The specifications are overruled.

Judgment affirmed.