## Commonwealth v. Schaller

*Hiram M. Drake*, for Commonwealth.
*B. H. Marks*, for defendant.

ROWLEY, P. J., April 12, 1950.—Defendant has been indicted upon three separate bills charging solicitation to commit sodomy. One indictment charges solicitation of Shirley Merchant; another solicitation of LaRene Allen, and the third solicitation of Maynetta Sloan.

The three indictments are identical except for the name of the person solicited. Each charges that defendant "did unlawfully solicit and incite and endeavor to persuade . . . to commit the act of sodomy with him and upon him."

In response to defendant's rule, the Commonwealth filed the following bill of particulars:

"The Commonwealth expects to be able to prove on the trial of the above stated cases the following matters, to-wit: (1) On or about November 7, 1949, at

about 3:45 o'clock P. M., in the City of Sharon, Mercer County, Pennsylvania, the defendant Lewis Schaller, drove his car up along the curb on Vine Street in said City, where there were about eight children, ranging in age from eight to thirteen years, gathered on the sidewalk, and included in the group were: Shirley Merchant, LaRene Allen and Maynetta Sloan. The defendant then and there stopped his car with its doors closed, but with the window next the group open, addressed the group and asked, 'What is that girl crying for?', and, after a pause, 'Come here until I suck you off.' Another one of the group will testify that the defendant said, 'Hey, you, come here, then he said that word.' Another will state that the defendant said, "Come here, girls, let me suck you up.' Another will state that the defendant said, 'Hey, you girls, come here, I suck you up.'

"2. The defendant did not get out of his car or make any other inducements to any of the group to enter it or to go away with him. The defendant then drove his car about a block up the street, stopped, and talked to some men along the sidewalk."

Subsequent to the bill of particulars defendant filed a pleading in the nature of a demurrer to the indictment and bill of particulars, which complains that the facts set out in the bill "are not sufficient in law to constitute a crime of solicitation to commit sodomy for the following reasons:

"1. That paragraph 502 of the Act of 1939, P. L. 872, 18 PS §4502, requires that defendant solicit and incite.

"2. The Commonwealth in its bill of particulars does not give anything that constitutes inciting.

"3. That in order to constitute the crime charged it is necessary to prove that defendant did solicit and incite and the bill of particulars does not disclose any act of inciting."

Briefly stated, defendant's contention is that an indictment for solicitation to commit sodomy must be supported by evidence of "inciting", whereas the facts here, he says, constitute nothing more than solicitation.

Defendant relies heavily upon Smith v. The Commonwealth, 54 Pa. 209, where the court held that solicitation of a married woman to commit adultery was not indictable. The decision there rested to some extent upon the fact that adultery is only a misdemeanor; however, the principal basis for the decision seems to be the difficulty of determining "what expressions of the face or double entendres of the tongue are to be adjudged solicitation? What freedoms of manners amount to this crime?" The court asks, "could the law safely undertake to decide what recognitions in the street were chaste and what were lewd? It would be a dangerous and difficult rule of criminal law to administer." The court apparently concluded that the jeopardy to personal liberty inherent in the application of such a rule would far outweigh the risk of injury to the public morals if such solicitation was not proscribed.

There are other cases which consider whether solicitation to murder, bribery, embracery and other crimes are indictable. In some of these, the court disclosed an inclination to declare that if the crime solicited was a misdemeanor, the solicitation was not indictable. However, we do not have here the question whether the misconduct charged against the instant defendant is an indictable offense. For the sake of brevity the crime is referred to as "solicitation to commit sodomy". The statute declares the misconduct which it describes to be a felony. The precise point is, therefore, whether in addition to solicitation there must be evidence of something constituting an "inciting".

We believe it must be conceded that the purpose of the statute was to punish one who seeks to induce an-

other to participate in sodomy. The words of the statute are:

"Whoever, unlawfully and maliciously, assaults another with intent to commit sodomy, *or solicits, and incites another to permit and suffer such person to commit sodomy with him or her, is guilty of a felony.*"

Something of an argument might be presented to support a proposition that inasmuch as the term "incite" means "to arouse to action", there could not be a conviction of this offense unless the effort of the accused was successful.

Indeed, the brief of defendant's counsel seems to so argue, "Solicit has a passive connotation—to ask some one to do something; incite has an active connotation—to make some one do something."

Scarcely any one would seriously contend for such a construction of the law.

The Act of March 31, 1860, P. L. 382 sec. 33, declared it a misdemeanor

"If any person shall unlawfully and maliciously assault another, with the intent to commit sodomy or buggery, or if any person shall wickedly and unlawfully solicit and incite *and endeavor to persuade another, to permit and suffer such person to commit sodomy or buggery with him.*"

The Act of 1860 was superseded by the Act of 1917, P. L. 1000, sec. 3, which reads: "If any person shall wickedly and unlawfully solicit and incite and endeavor to persuade another to permit and suffer such person to commit sodomy. . . . "

The legislative drafting committee (18 PS §4502, note) offers this comment upon the instant Act of 1939, which superseded the Act of 1917:

"In the revised section the words 'or solicits or incites another' are substituted for the words 'or if any person shall wickedly and unlawfully solicit or incite and endeavor to persuade another' which appeared in

Act 1917, July 16, P. L. 1000, §3, which otherwise read substantially the same."

It is clear from this comment that the drafting committee intended that the words 'solicit' and 'incite' were to be read in the disjunctive.

. . . "when construing the intention of the legislature we have often been obliged to construe the conjunctions 'or' and 'and' interchangeably. Endlich on the Interpretation of Statutes, section 303, page 412, says: 'To carry out the intention of the Legislature it is occasionally found necessary to read the conjunctions 'or' and 'and', one for the other": Phila. Nat. Bank v. Buchman 314 Pa. 343.

In the construction of statutes it has frequently been necessary to hold the word "or" to mean "and": Wilson v. Wilson, 126 Pa. Superior Ct. 423.

In Rolland and Johnston v. Commonwealth, 82 Pa. 306, the words of the statute "break *or* enter" were read "break *and* enter".

"It is said in Dwarris on Statutes 772, that ' "and" is not always to be taken conjunctively. It is sometimes, in the fair and National construction of a statute, to be read as if it were "or", and taken disjunctively and distributively' '': Rolland and Johnston v. Commonwealth, supra.

From earliest days laws and legal instruments have been notably verbose. We have departed moderately from the custom but legislatures still incline toward tautology. Presumably, the purpose is to include various phases of a particular matter.

The instant statute condemns one who "unlawfully and maliciously, assaults another with intent to commit sodomy." The words "unlawfully and maliciously" are pure surplusage. The offense is an attempt to commit sodomy. Such an assault could under no circumstances be lawful and nonmalicious.

We are commonly disposed to regard a word as having a single meaning; the meaning is often colored

by the association in which we have been accustomed to see or hear the word employed. We are likely to say "incite" a riot, but "solicit" (not "incite") bribery. The result is that we come to regard "incite" as meaning something more violent, or at least more active and more insistent than "solicit". In Commonwealth v. Merrick et al., 65 Pa. Superior Ct. 482, there was an indictment for inciting to riot. The Superior Court said "incite" means: "to arouse, stir up, urge, provoke", etc.

The misconduct there was prohibited because the effect was to breach the peace. The instant complaint is against conduct which tends to debauch the morals.

Terms employed to describe what misconduct endangers the public peace do not so appropriately describe actions which jeopardize the public morals; nevertheless identical terms are frequently used for both purposes.

The aim of the statute now under consideration was to punish one who seeks to induce another to participate in sodomy. The proposal is interdicted whether it be presented violently or by entreaty or blandishment.

The words "solicit" and "incite" are virtually synonymous, notwithstanding our somewhat general practice of according to them slightly different meanings. The import of each is shaded by its context.

The American College Dictionary (Barnhart) gives the following definitions:

"Incite, to urge on; stimulate or prompt to action. (Latin, incitare, set in motion.) Synonyms—encourage; instigate, provoke, goad, spur, arouse, fire; induce.

"Solicit, (1) to seek for by entreaty, earnest or respectful request, formal application.

"(2) to entreat or petition (a person, etc) for something or to do something; urge; importune.

"(3) to seek to influence or incite to action, esp. unlawful or wrong action.

"(4) to accost (a man) with immoral intention.

"(5) to make petition or request, as for something desired. (Latin, solicitare, disturb, incite)."

We are wholly unable to concur with defendant's contention that the Commonwealth is bound to establish conduct which goes beyond what is comprehended in the term "solicitation".

If the jury should find the facts as set forth in the bill of particulars but should further find that there was no expectation that the child would yield and no intent on the part of defendant to pursue the matter further than the stage of nasty speech, a question might arise with which we need not now be concerned.

### Order

And now, April 12, 1950, this matter came on for argument upon defendant's demurrer to the indictment and bill of particulars, and same was argued, whereupon after due consideration it is ordered, adjudged and decreed that the demurrer be overruled and defendant be directed to plead over.