Commonwealth *v.* Piper, Appellant.

Argued December 6, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING and CERCONE, JJ.

*James M. Potter,* for appellant.

*Grant E. Wesner,* Deputy District Attorney, with him *Robert L. Van Hoove,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, March 24, 1972:

Judgment of sentence affirmed, and the defendant is directed to appear in the court below at such time as she may be there called, and that she be by that court committed until she has complied with the sentence, or any part thereof which has not been performed at the time the appeal was made a supersedeas.

DISSENTING OPINION BY HOFFMAN, J.:

In this direct appeal, appellant attacks her convictions for solicitation to commit sodomy, prostitution and assignation.

The facts in this case, as established at appellant's jury trial, are that appellant approached an undercover state police trooper and solicited him to commit sodomy and prostitution. Based on this conversation, a warrant was issued and served for the arrest of appellant charging her with the crime for which she was found guilty. The lower court sentenced her to 15 months imprisonment, undifferentiated as to the charges, at the State Industrial Home for Women (Muncy) pursuant to the Act of July 16, 1968, P. L.    , No. 171, §1, 61 P.S. §566 (The New Muncy Act).

I

The prosecution of appellant for solicitation to commit sodomy was brought purportedly under the Act of June 24, 1939, P. L. 872, §502, 18 P.S. §4502. This act provides that "[w]hoever, unlawfully and maliciously, assaults another with intent to commit sodomy, or solicits, and incites another to permit and suffer such

person to commit sodomy with him or her, is guilty of a felony. . . ."

The lower court interpreted this language to mean that mere solicitation to commit sodomy, without more, is sufficient to constitute a violation of the act. Accordingly, the court charged the jury that "if you find from the evidence that the defendant spoke words of suggestion or proposition or urging, to Trooper Goldern, to commit sodomy with her, with the intention on the part of the defendant to pursue the matter further, by committing the unlawful act of sodomy, if Trooper Golden was willing to participate, then you should find the defendant guilty of count 1, solicitation to commit sodomy."

This charge, in my view, is based upon a misreading of 18 P.S. §4502. That statute on its face only punishes assaults with intent to commit sodomy and actual consensual sodomy. On at least two other occasions, however, lower courts have held that 18 P.S. §4502 punishes the mere solicitation to commit sodomy. *Commonwealth v. Krout*, 17 Pa. D. & C. 2d 795 (1958) ; and *Commonwealth v. Schaller*, 72 Pa. D. & C. 459 (1950).

In *Schaller* (*Krout* relies exclusively on *Schaller*), the Court held that 18 P.S. §4502 was predicated on the prior Act of July 16, 1917, P. L. 1000, §3 (formerly 18 P.S. §833), and that both the present act and the Act of 1917 punished mere solicitations to commit sodomy. There are no relevant appellate court cases with respect to §4502 or the Act of 1917.

The Act of 1917 provides in Section 3 thereof that "[i]f any person shall unlawfully and maliciously assault another, with intent to commit sodomy as in this act defined, *or* if any person shall wickedly and unlawfully solicit and incite and endeavor to persuade another to permit and suffer such person to commit sodomy, as in this act defined with him or her, such person

shall be guilty of a misdemeanor. . . ." (Emphasis added.)

Distinctions between the Act of 1917 and the present act are apparent.

First, the Act of 1917 provides in the disjunctive that assaults with intent to commit sodomy "or if any person shall . . . solicit and incite and endeavor to persuade another to permit and suffer such person to commit sodomy" are both punishable offenses. With respect to the present act, however, a crime is committed if one solicits, and incites another to permit and suffer such person to commit sodomy with him or her. The operative distinction is that the Act of 1917 makes it a crime simply to *"endeavor to persuade* another to permit and suffer such person to commit sodomy . . . with him or her." The present act does not punish persons who endeavor to persuade others to commit sodomy with them, but only persons who "incite another to permit and suffer such person to commit sodomy with him or her." Thus, the present act comports with the philosophy set forth in *Smith v. Commonwealth,* 54 Pa. 209 (1867), that prosecutions for solicitation should be limited because of the vast possibilities of abuse where there is no overt act to substantiate the solicitation.

Second, if the present act were read to punish mere solicitations to commit sodomy, the words "incite" and "and suffer" would be surplusage. Such words, however, have a meaning distinct from that of "solicit". While solicit means to offer, "incite" has as "its plain and accepted meaning—to arouse, stir up, urge, provoke, encourage, spur on, goad, . . ." *Commonwealth v. Merrick et al.,* 65 Pa. Superior Ct. 482, 489 (1917). Thus, to "incite", one must have an effect upon the person one is trying to influence. This clearly did not happen in the instant case. Here, the person solicited by appellant was an undercover vice squad state trooper

whose specific assignment was to be solicited by prostitutes. There was absolutely no evidence that he was incited by the solicitation by appellant, and in fact the opposite would seem to be true insofar as he was responsible for her arrest.

The present act's requirement that the person addressed must "suffer [the person making the solicitation] to commit sodomy with him or her" likewise has a distinct meaning from the conjunctive requirement that the person who suffers the sodomy must also permit it. The word "permit" means merely to allow. The word "suffer", however, indicates that there is some requirement that the person addressed must also undergo some physical contact with or without permission. Thus, in *Dunscath v. Traction Co.,* 161 Pa. 124, 130 (1894), and in *Philadelphia and Reading Railroad Company v. Long,* 75 Pa. 257, 265 (1874), the word "suffer" was understood as implying that an actual act was done, albeit with permission. In *Shaffer v. Greer,* 87 Pa. 370, 375 (1878), it was held that the "word 'suffered' necessarily implies that it is not confined to the voluntary acts of the grantor. . . ."

Accordingly, the words "incite" and "suffer" have accepted jurisprudential meaning which militate against the present act as being read to punish mere solicitations.

Of course, the presence of "incite" and "suffer" in the present act can be ignored or rationalized as was the case in the lower court's opinion in *Schaller,* but to do so violates the fundamental principles set forth in the Statutory Construction Act,[1] that "[w]ords and phrases shall be construed [in statutes] according to their common and approved usage. . . ." and that "[e]very law shall be construed, if possible, to give effect to all its provisions. When the words of a law

---

[1] The Act of May 28, 1937, P. L. 1019, Art. III, §33, 46 P.S. 533.

are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursing its spirit." 46 P.S. §551.

Further, we are here dealing with a penal statute which we must strictly construe. Doubts concerning the scope of the statute should be resolved in favor of a defendant. 46 P.S. §558. As was stated in *Commonwealth v. Hosendorf*, 437 Pa. 219, 263 A. 2d 439 (1970), which in turn quoted from Justice FRANKFURTER's statement for the Supreme Court in *Bell v. United States*, 349 U.S. 81, 83 (1955), "it is 'a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment'." This principle rests upon " 'the instinctive distaste against men languishing in prison unless the law maker has clearly said they should'." 437 Pa. at 223, 263 A. 2d at 441.

Therefore, I would hold that the solicitation in the instant case is not punishable pursuant to 18 P.S. 4502, and that the appellant should have been discharged on the count of solicitation to commit sodomy.

## II

If the appellant's conviction to commit sodomy is vacated, the sentence imposed cannot stand. The crimes of prostitution and assignation herein merge, and the appellant may only be sentenced for their commission to a maximum of one year imprisonment. The Act of June 24, 1939, P. L. 872, §512, 18 P.S. 4512. Since the maximum sentence is therefore not more than one year, appellant cannot be committed to Muncy pursuant to the express provisions of the New Muncy Act, supra.

## III

Even if solicitation to commit sodomy conviction were valid, the sentence imposed upon the appellant of

a fifteen-month term of imprisonment, with no minimum sentence imposed, is illegal. The provision in the New Muncy Act providing only for the setting of a maximum sentence but no minimum sentence is unconstitutional as it constitutes a denial of equal protection to women so sentenced.

Specifically, the Act of June 19, 1911, P. L. 1055, §6, as amended, 19 P.S. 1057, provides that any person convicted of a crime punishable by imprisonment in a State penitentiary shall be sentenced to both a maximum and a minimum term, the minimum never to exceed one-half of the maximum sentence. While the minimum sentence imposed has no compelling significance, it has been construed to be an administrative notice by the court to the Parole Department calling attention to the legislative policy that when a prisoner's minimum sentence is about to expire, the Parole Department should consider the question of whether the prisoner ought to be paroled. *Commonwealth ex rel. Atkins v. Pennsylvania Board of Parole,* 63 Dauph. 239 (1952) ; *Commonwealth ex rel. Gray v. Pennsylvania Board of Parole,* 62 Dauph. 456 (1952) ; *Commonwealth v. Kalck,* 239 Pa. 533, 541, 87 A. 61 (1913).

Although the Board of Parole may refuse to grant a prisoner a parole at the end of his minimum sentence, the minimum sentence has tremendous practical significance as it is equivalent to an order to the Board of Parole that review of a prisoner's status should be started as of a certain time.

In the absence of a stated minimum sentence, however, consideration of whether a prisoner should be paroled may begin the day he is incarcerated. On the other hand, review of his parole status may not begin until a substantial time period has elapsed after the time when the prisoner would have finished serving his

minimum sentence, had the Court imposed such a sentence.[2]

Accordingly, the Board of Parole is given unfettered discretion in determining whether and when to consider whether a person sentenced to either a fixed maximum term of imprisonment or an indeterminate sentence is to be paroled.

The question before this Court then is whether it is constitutionally permissible for the legislature to provide that women sentenced to Muncy should not have a minimum sentence, but that men sentenced on the same types of crimes shall have a minimum sentence imposed, insofar as the minimum sentence has tremendous significance with respect to the placing of the convicted person on parole.

In the instant case it should be noted that both men and women can be convicted and sentenced under the sodomy and prostitution statutes upon which the lower court relied.

No rational basis for distinguishing between the parole treatment accorded men and women is apparent. While it is true as stated in *Commonwealth v. Daniel,*

---

[2] Such was the case after the passage of the New Muncy Act. At that time Muncy authorities devised a mechanical formulation that a woman serving a two-year maximum sentence at Muncy must wait eight months before being considered for parole by the State Board of Parole. A year's waiting period was required for those women sentenced to a longer maximum term. A man sentenced to a maximum of two years with a minimum term of four months is considered as eligible for parole at the expiration of four months, while a woman convicted of the same crime and sentenced under the New Muncy Act to the same maximum of two years was not considered for parole until eight months from the date of her sentence, a full four months longer than her male counterpart. See the study of parole procedures contained in *Constitutionality of the 1968 Muncy Act,* an unpublished paper by Maxine Stotland, Esq., a copy of which paper I have filed with the Prothonotary of the Superior Court.

430 Pa. 642, 649-650, 243 A. 2d 400 (1968), that "a classification by sex alone would not, *per se,* offend the Equal Protection Clause of the United States Constitution", it is also true that "considerations and factors which would justify a difference between men and women in matters of employment, as well as in a number of other matters, *do not govern* or justify the imposition of a longer or greater sentence of women than is imposed upon men for the commission of the same crime. In particular, we fail to discern any reasonable and justifiable difference or deterrents between men and women which would justify a man being *eligible* for a shorter maximum prison sentence than a woman for the commission of the same crime, especially if there is no material difference in their records and the relevant circumstances."

Since the net effect of sentencing women only to a stated maximum and men to a stated maximum and minimum is to discriminate as between them in terms of consideration of their parole, the language in *Daniel* is directly applicable to the New Muncy Act. See also *Reed v. Reed,* 400 U.S. 816, 92 S. Ct. 251 (1970). Indeed, the Court in *Daniel* recognized as much when in commenting on the predecessor Muncy Act, therein declared unconstitutional, it was noted that "[t]he privilege of a minimum sentence given to men under the Act of 1911 may ultimately govern their release under parole." 430 Pa. at 647.

I conclude, therefore, that the act on its face is unconstitutional and appellant should not have been sentenced in accordance therewith.

SPAULDING, J., joins in part three of this dissenting opinion and would affirm in all other respects.