222 Pa. Superior Ct. 453 (1972)
Commonwealth
v.
Mason, Appellant.
Superior Court of Pennsylvania.
Argued March 13, 1972.
September 15, 1972.
*454 Before WRIGHT, P.J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and PACKEL, JJ.
Richard M. Mohler, Public Defender, for appellant.
Horace J. Culbertson, District Attorney, for Commonwealth, appellee.
OPINION BY PACKEL, J., September 15, 1972:
The appellant was found guilty of maliciously libeling two judges, a district attorney, an editor and chairman of a water authority, and a businessman and chairman of a sewer authority. Some samples of appellant's statements are:
*455 "Ruble left the country, really, He's spending Mifflin County money in Europe."

* * *
"Brower is a perfect out-law.
"James H. Brower, president of the Lehman/Siegel ghost corporation, is a crook's crook.
"JIM BROWER IS A SUPER CROOK.
"Maybe we should make Judge Lehman serve the sentences of those who he lets off illegally, Judge Lehman, Like that outlaw Lee Ziegler, took an oath to enforce the law, any more jokes????"

* * *
"The whores love Judge Lehman because he guarantees them a meal ticket, either by way of a relief check or nice support payments.
"Judge Lehman and Lee R. Ziegler will never give us our rights; we must take our rights from them."

* * *
"Lehman lets Dick Ruble get away with horriable [sic] crimes. Lehman doesn't know what an honest days' work is; that is why he lets the filthy reliefers off so easy."

* * *
"Judge Lehman and Ziegler have treacherously ignored the law, committed terriable [sic] crimes and sinned in the most unforgivable ways."

* * *
"Dick Ruble is a traitor."

* * *
"We know the pipsqueak Brower was a draft-dodger."

* * *
"Lehman is our sad, bad, glad, and mad Judge's name; he refuses to display Old Glory in the Kangaroo Court Room."

* * *
*456 "Our District Attorney Horace J. Culbertson, Paul S. Lehman, and Richard S. Ruble are all traitors; all three of these named men have sold America down the river."

* * *
"This deals with his using his powerful position of Chairman of the water authority to collect bribes."

* * *
The lower court charged the jury time and again that guilt could be found only if the statements were malicious and only if they were false. The appellant offered no testimony and there was no evidence that any of the statements were truthful.
At the outset we are confronted with the three to two opinion in Commonwealth v. Armao, 446 Pa. 325, 286 A. 2d 626 (1972) that our criminal libel legislation and a pertinent constitutional provision are of no force or effect because they do not comport with our federal constitutional guarantees concerning freedom of speech and freedom of the press. Since that opinion was by less than a majority of seven justices, comprising a full court, we believe that stare decisis does not bind us,[1] *457 particularly since important public interests are affected by its declaration of unconstitutionality.[2]
We have reviewed the federal decisions and conclude that they do not mandate the absolute elimination of criminal libel legislation. The line of federal civil cases, referred to in Armao, supra, from New York Times Co. v. Sullivan, 376 U.S. 254, 84 S. Ct. 710 (1964) to Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S. Ct. 1811 (1971), make it crystal clear that causes of action are still maintainable for malicious libel. The only recent criminal libel case decided by the Supreme Court did not outlaw the criminal libel legislation of a state, Garrison v. Louisiana, 379 U.S. 64, 85 S. Ct. 209 (1964). It held only that, absent malice and falsity, a criminal conviction could not be sustained under the federal constitution. Thus the majority opinion pointed out that a criminal conviction could be based upon malice (379 U.S. at 75): "The use of calculated falsehood, however, would put a different cast on the constitutional question. Although honest utterance, even if inaccurate, may further the fruitful exercise of the right of free speech, it does not follow that the lie, knowingly and deliberately published about a public official, should enjoy a like immunity. At the time the First Amendment was adopted, as today, there were *458 those unscrupulous enough and skillful enough to use the deliberate or reckless falsehood as an effective political tool to unseat the public servant or even topple an administration. Cf. Riesman, Democracy and Defamation: Fair Game and Fair Comment I, 42 Col. L. Rev. 1085, 1088-1111 (1942). That speech is used as a tool for political ends does not automatically bring it under the protective mantle of the Constitution. For the use of the known lie as a tool is at once at odds with the premises of democratic government and with the orderly manner in which economic, social, or political change is to be effected. Calculated falsehood falls into that class of utterances which `are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. . . .' Chaplinsky v. New Hampshire, 315 U.S. 568, 572. Hence the knowingly false statement and the false statement made with reckless disregard of the truth, do not enjoy constitutional protection."
An analysis of the Pennsylvania situation reveals that the constitutional provision[3] prohibits certain criminal libel convictions. It does not, however, purport to impose the bases for conviction. That it authorizes, inferentially, criminal libel legislation based upon negligence does not mean that the constitutional provision must be stricken.
*459 The Act of June 24, 1939, P.L. 872, § 412, 18 P.S. § 4412,[4] a codification of an 1860 codification, refers to a malicious or defamatory libel and makes no reference to negligence. That Act must, however, be read together with the Act of April 11, 1901, P.L. 74, § 1, 19 P.S. § 801.[5] It relates to candidates for, and holders of, public office. Like the constitutional provision referred to, it is in restrictive form and only carries an inference that convictions may be based upon negligent conduct. To the extent that either this Act or the Pennsylvania Constitution would permit a conviction based upon negligence, the conviction would have to be set aside in view of the federal constitution. Likewise, to the extent that Pennsylvania law would be construed to prevent the defense of truth, a conviction could not withstand constitutional attack.
The libel conviction in the instant case clearly deals with malicious and untruthful statements. This was the finding of the jury after the judge had repeatedly charged that there could be no finding of guilt unless they found both malice and untruthfulness.[6]
*460 Much might be said, and has been said,[7] about the undesirability of criminal libel legislation. For that reason the official draft of the Model Penal Code of the American Law Institute[8] omits the crime of libel. This determination, however, is a legislative function and this Court should not take it upon itself to eliminate the crime of libel whatever may be the predilections of its members.
With respect to the earlier quoted statements, in addition to many others published by the appellant, he was also convicted of violating the anonymous communications provision of The Penal Code, Act of June 24, 1939, P.L. 872, § 414, 18 P.S. § 4414.[9] He attacks its constitutionality but we find that we do not reach that point. This provision of The Penal Code is a reenactment of the Act of May 25, 1897, P.L. 85. In view of the nature of the provision involved, its heading and its history, there is little room for doubt that it was meant to cover communications the authorship of which was unknown. The appellant contends that the communications in this case were not anonymous, even though no signature was appended to the statements because their authorship was publicly known, they were serially numbered and were published in similar fashion for a long period of time. At oral argument it was conceded that the authorship was well *461 known. We believe that the essence of this crime is anonymity and the mere technical absence of a signature was not intended to be a violation of the statute.
Judgment of sentence in criminal action No. 21 is affirmed and judgment of sentence in criminal action No. 22 is reversed.
WATKINS, J., would certify the case to the Supreme Court.
CONCURRING AND DISSENTING OPINION BY SPAULDING, J.:

No. 21  Convictions for Criminal Libel

I.
This case is the first instance in which we have been required to decide appeals from convictions for violations of our criminal libel and anonymous communications statutes[1] since the Pennsylvania Supreme Court's decision in Commonwealth v. Armao, 446 Pa. 325, 286 A. 2d 626 (1972). That decision held the criminal libel statutes to be of no further effect and unconstitutional, under the decisions of the United States Supreme Court interpreting the First Amendment. I disagree with the majority that since "that opinion [Armao] was by less than a majority of seven justices, comprising a full court, . . . stare decisis does not bind us, particularly since important public interests are affected by its declaration of unconstitutionality." The position of our *462 Court in Pennsylvania's unified judiciary, the orderly administration of justice and the necessity for greater foreseeability and certainty in the law compel the opposite result, particularly since the constitutionality of a state statute is involved.
As an intermediate appellate court, our decisions are circumscribed by the law of Pennsylvania as established by the precedents of our Supreme Court. Were we to vary from their holdings and strike out on our own in deciding cases before us involving the same questions of law which our Supreme Court has already decided, that Court would be forced to review our decisions in every such case merely to enforce decisions already handed down. This would totally destroy the effectiveness of Pennsylvania's tripartite appellate court system, in direct derogation of the legislative intent in the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. I, §§ 101 et seq., 17 P.S. §§ 211.101 et seq. We cannot allow the destruction of stare decisis in this Commonwealth and the uncertainty of the law which would accompany it.
The majority summarily deals with this issue in the text of their opinion. Their reasoning is enunciated in footnotes 1 and 2, thereof, and relies on a decision which is, on closer examination, distinguishable from the instant case. The Pennsylvania case on which the majority relies, for the proposition that certain opinions of our Supreme Court are not decisional, is Commonwealth v. Silverman, 442 Pa. 211, 218, 275 A. 2d 308, 312 (1971). It held that Commonwealth v. Hosendorf, 437 Pa. 219, 263 A. 2d 439 (1970), was not decisional since the recorded opinion only expressed the views of three of the seven justices who heard that case, which was not a majority of the Court (three justices joined in the opinion, two concurred in the result, and two dissented). However, as the majority here notes *463 (at n. 1, supra), there is a distinction between the precedential value of Armao and Hosendorf. In Armao a majority of the participating justices did join in the views expressed by the opinion. Silverman, supra, while holding that an opinion is not decisional if it does not express the views of "a majority of the Court", does not indicate that an opinion is only decisional if an absolute majority of the full court joins in it. I would hold that any opinion joined in by a majority of the Supreme Court justices who heard the case binds us.
Armao, by its declaration of unconstitutionality, affected important public interests and should remain the law of Pennsylvania until such time as the Supreme Court "is properly called upon to re-examine the questions involved, and again subject them to judicial scrutiny". Majority opinion, at n. 2, citing Commonwealth ex rel. Margiotti v. Lawrence, 326 Pa. 526, 530, 193 A. 46 (1937). Once the Supreme Court has spoken, the citizens and bar of our Commonwealth are entitled to rely on its decisions until that Court reconsiders its determination, affecting the public or private rights involved.[2]

II.
Assuming arguendo that the majority's view, holding the decision in Armao not binding, is correct, I still must respectfully dissent. I cannot agree with their substantive holding that our criminal libel statutes, as *464 presently drawn, withstand constitutional attack. Both their opinion and Justice ROBERTS' majority opinion in Armao carefully review the relevant federal decisions applying the First Amendment to civil libel cases, from New York Times Co. v. Sullivan, 376 U.S. 254 (1964), to Rosenbloom v. Metromedia, Inc., 403 U.S. 29 (1971).[3] To avoid unnecessary repetition, I shall not undertake such a review here, but note in passing that the general review of this line of cases by the Supreme Court in Armao seems most persuasive in support of the position.
The Act of April 11, 1901, P.L. 74, § 1, 19 P.S. § 801, (with which the Act of June 24, 1939, P.L. 872, § 412, 18 P.S. § 4412 must be read),[4] and on which the instant conviction was based, provides that: "In all criminal prosecutions or indictments for libel, no conviction shall be allowed if the subject matter of the publication, whether contained in newspapers or otherwise, relates to candidates for public office or the official conduct of public officers, and is found to the satisfaction of the jury to be proper for public information or investigation and not to have been maliciously or negligently made. In all such cases the truth may be given in evidence to the jury." [Emphasis added.] Both the Armao Court and the majority in the instant case agree that to the extent that this statute permits a conviction based on negligence, giving no recognition to the "reckless disregard" of truth and "knowing falsity" standard mandated by New York Times, supra, and Garrison v. Louisiana, 379 U.S. 64 (1964), and extended to public officers or candidates by Rosenbloom, supra, it is constitutionally infirm. Both opinions also indicate *465 that to the extent that the act makes no provision for truth being an absolute defense and thereby prevents such a defense, it further fails to pass constitutional muster. In reaching these conclusions, the two opinions rely heavily on and quote liberally from Garrison,[5] supra, which "held that a Louisiana criminal libel statute incorporated constitutionally invalid standards in the context of criticism of public officials in that it directed punishment for true statements made with malice. The statute [there] was also infirm because it attached adverse consequences to false statements against public officials if made with ill will without regard to whether they were made with knowledge of their falsity or in reckless disregard of whether they were true or false." Armao, supra, at 334.
Where my view conflicts with that of the majority is over the application of the above principles to the statute. The majority premises its reasoning on the trial judge's charge to the jury in which he attempted to mold the statute to meet the constitutional requirements. He charged that there could be no finding of guilt unless the jury found both malice and untruthfulness were present. The majority supports this modification of the act, allowing truth as an absolute defense and eliminating negligently made statements from its proscriptions. They hold that "this Court should not *466 take it upon itself to eliminate the crime of libel whatever may be the predilections of its members". They therefore allow the severance of the unconstitutional provisions of the act.
I cannot agree. The more persuasive view is propounded by the Armao opinion in rejecting the Commonwealth's argument there, that the unconstitutional sections of the act are severable. The Court reasoned as follows: "The Commonwealth urges us to in effect re-draft the criminal libel statutes in accordance with First Amendment requirements. To accede to this request would be to undertake a wholly inappropriate judicial activity amounting to judicial legislation. See State Board of Chiropractic Examiners v. Life Fellowship of Pennsylvania, 441 Pa. 293, 300, 272 A. 2d 478, 482 (1971); Saulsbury v. Bethlehem Steel Co., 413 Pa. 316, 320, 196 A. 2d 664, 667 (1964). Nor can we perceive any possible means of merely severing out the invalid portions of the statutes, for not only must the legislative body have intended the statute or section to be severable, but also the act must be capable of separation in fact. See Saulsbury v. Bethlehem Steel Co., supra, at 320-21, 196 A. 2d at 666-67." 446 Pa. 338. I concur with this reasoning. The unconstitutional provisions on the face of the act were neither intended to be, nor are they capable of being severed, without causing a complete transformation of the conduct which is legislatively proscribed.
Alteration of the last sentence of the Act of April 11, 1901, P.L. 74, § 1 (italicized above), especially, to provide that truth is an absolute defense, would be contrary to the intent of the legislature. The clause reading "truth may be given in evidence to the jury" was apparently intended to recodify the identical language of the prior Pennsylvania statute, Act of July 1, 1897, P.L. 204, as interpreted by case law, which held *467 that truth is not an absolute defense. Commonwealth v. Swallow, 8 Pa. Superior Ct. 539, 605 (1898); see Commonwealth v. Scouton, 20 Pa. Superior Ct. 503 (1902); see also Respublica v. Dennie, 4 Yeates 267 (1805). Swallow was decided three years prior to the passage of the act and put the legislature on notice that the [same] language in the prior statute meant that: "The truth is not to be distorted in order to furnish a basis for denunciation or invective." 8 Pa. Superior Ct. at 605. Repassage of the same wording seems to imply approval of this holding.
Finally, the majority's interpretation of the statute seems contrary to the requirements of the Statutory Construction Act, Act of May 28, 1937, P.L. 1019, art. I, §§ 1 et seq., 46 P.S. §§ 501 et seq. The rule promulgated by 46 P.S. § 551 thereof is applicable here: "When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded. . . ." Our case law is in accord: "When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, . . .; the statute must be given its plain and obvious meaning . . .: 25 R.C.L., Sec. 217, p. 961." Commonwealth ex rel. Cartwright v. Cartwright, 350 Pa. 638, 645, 40 A. 2d 30 (1944); cited with approval in Davis v. Sulcowe, 416 Pa. 138, 205 A. 2d 89 (1964), and Pgh. Beer Corp. Liquor License Case, 216 Pa. Superior Ct. 71, 260 A. 2d 493 (1969). Even if the statute is determined not to be plain and unambiguous, which in my view it is, it still cannot be modified in the manner in which the majority indicates. As the Supreme Court indicated in Rossiter v. Whitpain Twp., 404 Pa. 201, 205, 170 A. 2d 586 (1961): "A court does not have the power to alter an act under the guise of construing it, nor can we read into it an intention that is just not there, nor can we add words to a statute where it is clear that they were intentionally omitted. See Calvert *468 Dist. Corp. v. Bd. of Finance & Rev., 376 Pa. 476, 103 A. 2d 668 (1954); Commonwealth ex rel. Cartwright v. Cartwright, 350 Pa. 638, 40 A. 2d 30 (1944); Panik v. Didra, 370 Pa. 488, 88 A. 2d 730 (1952)."
I would reverse the judgment of sentence at No. 21.
No. 22  Convictions For Anonymous Communications
I concur in reversing the judgment of sentence at No. 22. I would, however, reach the constitutionality of the anonymous communications statute, Act of June 24, 1939, P.L. 872, § 414, 18 P.S. § 4414,[6] which provides that the sending of any anonymous communication which is "either libelous, defamatory, scurrilous, or opprobrious" is a misdemeanor. For the same reasons enunciated above as to the criminal libel acts, I would declare this statute to be of no further effect and unconstitutional, as violative of First Amendment rights. "The statutory language makes no provision for truth being an absolute defense. Likewise, no recognition is given the reckless disregard and knowing falsity standard mandated by New York Times and Garrison." Armao, supra, at 337. Further, the First Amendment as interpreted by the United States Supreme Court forbids the imposition of criminal penalties for statements which are merely defamatory, scurrilous, or opprobrious. These standards are too vague to meet constitutional requirements and also fail to require a consideration of the intent with which such statements were made.
HOFFMAN, J., joins in this concurring and dissenting opinion.
NOTES
[1] Mr. Justice EAGEN in Commonwealth v. Silverman, 442 Pa. 211, 218, 275 A. 2d 308, 312 (1971) pointed out in a footnote that: "The recorded opinion in Hosendorf, supra, did not express the views of a majority of the Court, and, therefore, is not decisional." The distinction might be made that the Armao decision was that of a majority of the participating judges, whereas the Hosendorf opinion was not a majority opinion because two of the seven justices concurred in the result and two dissented. Nonetheless it would seem that the known certainty of the law, the basis for stare decisis, should stem from a determination by at least a majority of the full bench. In re Estate of Curzenski, 384 Mich. 334, 183 N.W. 2d 220 (1971) (4 to 3 decision by an 8 judge court); Sculthorp v. American Motors Corp., 4 Mich. App. 65, 143 N.W. 2d 767 (1966) (3 to 2 decision with 3 justices not sitting); Pollard v. Hill, 447 S.W. 2d 777 (Mo. App. 1969) (intermediate appellate court not bound by opinion of 4 judges of highest court when one judge concurred in the result and three dissented). Cf. Burak v. Com. of Pa., 339 F. Supp. 534 (E.D. Pa. 1972) (3 judge court).
[2] In Commonwealth ex rel. Margiotti v. Lawrence, 326 Pa. 526, 530, 193 A. 46, 48 (1937), the unanimous opinion of the Court quoted with approval the old and established rule stated by Cooley in Constitutional Limitations as follows: ". . . when a question involving important public or private rights, extending through all coming time, has been passed upon on a single occasion, and which decision can in no just sense be said to have been acquiesced in, it is not only the right, but the duty, of the court, when properly called upon, to re-examine the questions involved, and again subject them to judicial scrutiny."
[3] Article I, Section 7: ". . . No conviction shall be had in any prosecution for the publication of papers relating to the official conduct of officers or men in public capacity, or to any other matter proper for public investigation or information, where the fact that such publication was not maliciously or negligently made shall be established to the satisfaction of the jury; and in all indictments for libels the jury shall have the right to determine the law and the facts, under the direction of the court, as in other cases."
[4] "Whoever writes, prints, publishes or exhibits any malicious or defamatory libel, tending either to blacken the memory of one who is dead, or the reputation of one who is alive, thereby exposing him to public hatred, contempt or ridicule, is guilty of libel, a misdemeanor, and on conviction, shall be sentenced to pay a fine not exceeding five hundred dollars ($500), or undergo imprisonment not exceeding one (1) year, or both."
[5] "In all criminal prosecutions or indictments for libel, no conviction shall be allowed if the subject matter of the publication, whether contained in newspapers or otherwise, relates to candidates for public office or the official conduct of public officers, and is found to the satisfaction of the jury to be proper for public information or investigation and not to have been maliciously or negligently made. In all such cases the truth may be given in evidence to the jury."
[6] Contrast Armao, supra, where the factual defense was the truth of the publication and the trial judge charged that ". . . the greater the truth, the greater the libel. . ." (Record, 24a).
[7] Emerson, Toward a General Theory of the First Amendment, 72 Yale L.J. 877, 924 (1963).
[8] See Model Penal Code, Tent. Draft No. 13, 1961, § 250.7, Comments, at 44.
[9] "Whoever, without appending his proper signature thereto, sends or causes to be sent to another, any written or printed communication or matter, which is either libelous, defamatory, scurrilous, or opprobrious, is guilty of a misdemeanor, and on conviction thereof, shall be sentenced to pay a fine not exceeding five hundred dollars ($500), or undergo imprisonment for not more than one (1) year, or both."
[1] The statutes are set out in full in the majority's opinion, at n. 3, 4 (criminal libel), and 8 (anonymous communications). While I do not specifically deal with the constitutional challenge to Article I, Section 7 of the Pennsylvania Constitution, I concur with the Supreme Court's holding in Commonwealth v. Armao, 446 Pa. 325, 338, 286 A. 2d 626 (1972), that the last sentence thereof is unconstitutional, but may be severed from the first portion of the section dealing with freedom of the press generally. See Armao, at n. 3 for the text of that sentence.
[2] The legislature has determined that only four justices, i.e.  "a majority" of the seven, "shall have power to hold the said [Supreme] court." Act of April 14, 1834, P.L. 333, § 2, 17 P.S. § 10. This implies the majority of as few as four justices may decide any case. While the reference is not to stare decisis, the legislative intent seems to lend some support to the position that a majority of the justices who sit to hear any case can decide Pennsylvania Law.
[3] See Armao, at n. 4, which lists the United States Supreme Court's decisions in libel cases from New York Times to Rosenbloom.
[4] See n. 1, supra.
[5] The majority incorrectly staes that Garrison is the only recent criminal libel case decided by the Supreme Court, overlooking Ashton v. Kentucky, 384 U.S. 195 (1966), which, although not dealing with a state statute, did hold that the Kentucky courts' application of the common-law crime of libel was unconstitutional. This holding was based on the fact that the elements of the crime were so indefinite and uncertain as to make it inconsistent with constitutional provisions, despite the fact that, as here, the trial court charged that "malice is `an essential element of this offense' and falsity as well." 384 U.S. at 198. Compare this holding with the majority's view that our admittedly unconstitutional statute may be redeemed by such a charge.
[6] See n. 1, supra.